**Paris REIZAKIS, Appellant,**

**v.**

**Albert E. LOY, Appellee.**

**No. 72–2402.**

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1973.

Decided Jan. 22, 1974.

---

Boreman, Senior Circuit Judge, dissented in an opinion.

Thomas J. Harrigan, Arlington, Va. (Harrigan, Morris & Artz, Arlington, Va., on brief), for appellant.

Richard H. Lewis, Fairfax, Va. (Brault, Lewis, Geschickter & Palmer, Fairfax, Va., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and BUTZNER and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

Paris Reizakis appeals from an order dismissing his action against Albert E. Loy with prejudice.[1] Because the circumstances disclosed by this record do not justify the sanction imposed by the district court, we reverse.

Reizakis, alleging that he was a citizen of Canada, instituted this diversity

---

1. The court acted under Fed.R.Civ.P. 41(b), which provides in part:
    "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move dismissal of an action or of any claim against him . . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication upon the merits."
    The statute of limitations also bars reassertion of Reizakis' claim.

action on April 16, 1971,[2] and in due course, Loy filed his answer. On December 16, 1971, Loy moved to dismiss the action on the ground that Reizakis had not answered interrogatories propounded five months earlier. The same day, Reizakis' counsel filed the answers, and the motion to dismiss was promptly withdrawn. Attorneys for both parties met with the court for the initial pretrial conference on December 17. At the request of Reizakis' counsel for a continuance of the conference, the district court rescheduled it for June 15, 1972 and directed that all discovery should be completed by February 1, 1972. On December 20, Loy gave notice to take Reizakis' deposition on January 25, and the deposition was filed March 2, 1972.

During these proceedings, Reizakis was represented by Peter A. Chaconas, of Washington, D. C., and Rudolph N. D'Agaris, of Maryland. Because neither were residents of Virginia with offices in the state, they were prohibited by a local rule of the district court from representing Reizakis without being associated with a Virginia attorney who had been admitted to practice in the court. Reizakis' Virginia attorney was Robert C. Watson. In the latter part of May, Watson, with Reizakis' consent, prepared an order to permit D'Agaris and him to withdraw. At the June pretrial conference, the court denied withdrawal until Watson was replaced by another Virginia lawyer and set the case for trial on Tuesday, September 12, 1972. Notwithstanding the denial of his motion to withdraw, Watson took the position that Reizakis had released him in May. He notified Reizakis of the trial date, but apparently neither he nor D'Agaris did anything further to prepare for trial.[3]

Sometime after the middle of August, Chaconas satisfied himself that the doctors who were to be Reizakis' witnesses would be available for the September trial. However, he did not obtain subpoenas for them. In the meantime, acting on behalf of Reizakis, he made several unsuccessful attempts to engage local counsel to replace Watson, but not until the first week of September did he succeed in obtaining a new Virginia associate.

On Thursday, September 7, five days before the scheduled trial, Thomas J. Harrigan, the replacement for Watson, and Richard H. Lewis, attorney for Loy appeared before the district court. They were accompanied by Watson who moved for a continuance of the trial so that Harrigan could have a reasonable time to prepare the case. The record does not indicate that Lewis offered any objection at this time. The court, however, denied the continuance, and Harrigan declined to enter a formal appearance because he believed he could not prepare adequately in the short time remaining. Harrigan promptly told Chaconas of the court's ruling, and although he had not entered a formal appearance, he nevertheless said that if the witnesses were available he would attempt to prepare the case. The next day, Friday, Chaconas told Harrigan that the doctors were available and that the case was ready. Harrigan studied the file over the week end, but when he telephoned the doctors on Monday, September 11, he learned that none of them could be present. By this time it was too late to subpoena them.

On the day of trial, Tuesday, September 12, Reizakis, Chaconas, Watson, D'Agaris, and Harrigan appeared in the district court. Chaconas, citing the absence of the doctors, moved for a contin-

2. Reizakis brought suit to recover damages for personal injuries arising out of an automobile accident on April 13, 1970. He claims medical expenses in excess of $6,700, other special damages, and compensation for some permanent disability.

3. There is no record of events that took place between the pretrial conference, June 15, 1972, and the trial date, September 12, 1972 other than the colloquy between court and counsel on September 12, 1972. The court apparently credited the statements of all counsel, for it made no contrary findings.

uance. Lewis, noting the inconvenience to Loy's witnesses, objected, and the court denied the motion. Chaconas then stated that the witnesses who were to testify on the issue of liability were present, and he moved to have the trial proceed on this issue and for a continuance of the damage issue only. Again, Lewis objected, and the court denied the motion. Chaconas then conceded that in view of the court's rulings it was impossible to proceed, and Lewis moved to dismiss the case for lack of prosecution. The court granted the motion and assessed the costs, including jury fees, mileage, and per diem against Reizakis. It then granted Watson's and D'Agaris' motion to withdraw.

■ A district court unquestionably has authority to grant a motion to dismiss for want of prosecution. Fed. R.Civ.P. 41(b). Indeed, as the Supreme Court held in Link v. Wabash R.R., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the trial court can take such action on its own motion. But courts interpreting the rule uniformly hold that it cannot be automatically or mechanically applied. Against the power to prevent delays must be weighed the sound public policy of deciding cases on their merits. *See generally*, Wright & Miller, Federal Practice and Procedure: Civil §§ 2369, 2370 (1971). Consequently, dismissal "must be tempered by a careful exercise of judicial discretion." Durgin v. Graham, 372 F.2d 130, 131 (5th Cir. 1967). While the propriety of dismissal ultimately turns on the facts of each case, criteria for judging whether the discretion of the trial court has been soundly exercised have been stated frequently. Rightfully, courts are reluctant to punish a client for the behavior of his lawyer. Edsall v. Penn Central Transportation Co., 479 F.2d 33, 35 (6th Cir. 1973). Therefore, in situations where a party is not responsible for the fault of his attorney, dismissal may be invoked only in extreme circumstances. Industrial Building Materials, Inc. v. Interchemical Corp., 437 F.2d 1336, 1339 (9th Cir. 1970). Indeed, it has been ob-

served that "[t]he decided cases, while noting that dismissal is a discretionary matter, have generally permitted it only in the face of a clear record of delay or contumacious conduct by the plaintiff." Durham v. Florida East Coast Ry. Co., 385 F.2d 366, 368 (5th Cir. 1967). Appellate courts frequently have found abuse of discretion when trial courts failed to apply sanctions less severe than dismissal. *See e. g.*, Richman v. General Motors Corp., 437 F.2d 196, 199 (1st Cir. 1971); Flaksa v. Little River Marine Construction Co., 389 F.2d 885, 887 (5th Cir. 1968); Dyotherm Corp. v. Turbo Machine Co., 392 F.2d 146, 148 (3d Cir. 1968). And generally lack of prejudice to the defendant, though not a bar to dismissal, is a factor that must be considered in determining whether the trial court exercised sound discretion. Pearson v. Dennison, 353 F.2d 24, 28 (9th Cir. 1965).

■ It is in the light of the foregoing interpretation of Rule 41(b) that we must consider the circumstances of this case. The facts do not depict "a drawn out history" of "deliberately proceeding in dilatory fashion," as in Link v. Wabash R.R., 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). Moreover, Reizakis was not shown to be personally responsible for any of the incidents that delayed the case. While he knew that Watson wished to withdraw, he not unreasonably expected his principal counsel, Chaconas, to arrange for a local associate to comply with the rules. Furthermore, he apparently knew nothing about the failure to subpoena the doctors. To the contrary, it appears that he advanced money for witness fees and expected the case to be tried as scheduled. His attorneys were unable to proceed either because they failed to give the doctors adequate notice, or because Chaconas relied on his understanding that the doctors would be available without taking the precaution of subpoenaing them. In selecting an appropriate sanction for this dereliction, the district court did not consider measures less drastic than dismissal, such as imposing

a fine or costs against Reizakis' attorneys. Finally, it does not appear that a continuance would have prejudiced Loy's defense. Of course, Loy, his witnesses, and his attorney would have been subjected to extra expenses and inconvenience if the case had been rescheduled, but monetary sanctions were available to rectify this harm as well. Moreover, inconvenience to some of the witnesses could have been prevented by trying the issue of liability as suggested by Reizakis' counsel.

The District Court for the Eastern District of Virginia is exceptionally busy, and the demands on the time of its judges and its jurors are great. Its judges properly are diligent in bringing litigation to trial without delay. But the interpretation of Rule 41(b) found in the well reasoned cases cited above bars dismissal for the circumstances disclosed by this record. Available to the district court were lesser sanctions sufficient to assure prompt disposition of this case and to discourage similar conduct in the future. Additionally, the liability issue could have been tried, and if Reizakis lost, the case would have ended without further delay.

The judgment is reversed, and this case is remanded with directions that it be reinstated.

BOREMAN, Senior Circuit Judge (dissenting):

With all due regard and respect for the opinion of my brothers, somewhat reluctantly I state this note of disagreement. Naturally, our sympathies are with any litigant who suddenly discovers that the results of his counsel's inattention, indifference, lack of diligence, or negligence, are visited upon him in terms of the dismissal of his case and the loss of an opportunity to be compensated in damages for personal injuries; but sympathy can have no place in the decision process. Each case properly is to be considered on its own peculiar facts and circumstances.

"The first sentence of Rule 41(b) [Fed.R.Civ.P.] provides for the dismissal 'of an action or of any claim' for failure of the plaintiff to prosecute. The quoted language is comprehensive" and the Rule "clearly places dismissal for failure to prosecute in the district court's discretion." 5 Moore's Federal Practice ¶ 41.11 [2], pp. 1114–1115. What constitutes "failure to prosecute" depends, of course, on the facts of the particular situation presented to the court and, in exercising its sound discretion, the court should consider all the pertinent circumstances. However, the law is clear that an order of dismissal for failure to prosecute will not be disturbed on appeal unless there has been a clear abuse of discretion.

The majority opinion undertakes to recite the facts which were before the district court at the time of the dismissal for failure to prosecute.

In the margin is set forth an excerpt from the transcript of the proceedings before the court when the case was called for trial.[1] Summarizing, the

---

1. MR. CHACONAS: At this moment, Your Honor, I would like to make a motion.
   THE COURT: All right, sir.
   MR. CHACONAS: I would like to make an oral motion to ask for a continuance in this case due to the fact that our expert witnesses are not available at this moment. We do not know when they will be, and if your Honor does not grant us the motion, therefore, I ask that the case will not be submitted to this Court at this time.
   THE COURT: The case has been set for trial since June 15. Ample time has been had to prepare the case. If there was a question of the unavailability of any witnesses, that should have been ascertained from depositions taken. There was ample time for those depositions.
   MR. CHACONAS: For the record, I would like also to state that these Doctors are not available because they are performing their duties in the medical profession as we are attempting here to perform our duties in the legal profession.
   I do respect the Court's opinion in denying me the motion for a continuance, but I want the record to clearly show that there was an attempt by the Attorneys for the Plaintiff to obtain and retain these Doctors to appear

here today, and I want the record to clearly state that.

THE COURT: Were subpoenas issued?

MR. CHACONAS: There were not subpoenas issued. There were telephone conversations and telegrams to ascertain the presence of these Doctors, but unfortunately, apparently, their emergencies were above their presentation here for the purposes of their patients, I suppose.

THE COURT: Can you tell me when you first ascertained that they would not be available?

MR. CHACONAS: Well, we began three and four weeks ago and as of Friday we ascertained that one of the Doctors would be available today, but he is out of town, and through secretaries or answering service or whatever it may be, but the point is that they were contacted through their agencies or agents or through the answering bureau or the Medical Bureau, and they were put on notice and we have taken our position that they were put on notice.

THE COURT: Three or four weeks ago when you ascertained that some of them might be unavailable was any effort made—

MR. CHACONAS: No, your Honor, we were not put on that notice. We were put on notice that they would be in contact and be available, and that is where we stand. I don't think that a legal profession should be running around on a horse looking for Tonto or something like that. These people are owed money. They have for two years been taking care of Mr. Reizakis. I don't know what it is. It is just a situation that is difficult for our profession, and I do hope you sympathize with our position that we just cannot put these people in line to just come in sometimes, and it is not a question that they are being denied their fee because the fees are available; they are income, and I do believe that the client—and the client is not a citizen of this country. This is the unfortunate part about it.

Your Honor, the client has a right to be represented and he has a right to be represented in the sense that we do have available people to testify for him, and the surety of the situation is with professionism, whatever it may be.

I am not trying to put on a speech. They are just not here, and we did our duty as officers of the court, and that is all we can do.

.    .    .    .    .

MR. HARRIGAN: Your Honor, since my name has been mentioned, I would like to explain the situation for the record if it does go to the Court of Appeals.

Last week, a week ago, I was first contacted. The file was brought into my office.

.    .    .    I told counsel for the Plaintiff that I would attempt to contact the various parties and came into court last Thursday, which was five days ago, and move for a continuance and with Mr. Watson, who had a motion to withdraw, I came in and requested in fact that if the case would be continued Mr. Watson could be allowed to withdraw and then I could go on record, and I was not on record at that time.

The Court denied that. I did not go on record. I notified Mr. Chaconas that same day of the Court's ruling and told him to immediately notify the Doctors and that if he got his witnesses together I would be glad to help out and attempt to get in the case and try it for him.

Friday of last week, three days ago, he notified me he contacted the Doctors and that they were available, the ones that were needed, that the case was prepared.

I prepared the case over the weekend. Yesterday I contacted the Doctors for the purpose of finding out—telling them what time I would have them on call, and when I contacted them all of them said, "I couldn't be there," they had to be somewhere else.

One was out of town, and late last night —and at that point it was too late to issue any subpoena for anyone, and it was only late last night that I determined that no Doctors would be available whatsoever, and I informed Mr. Chaconas, informed the Clerk the monies were available for the Doctor's fees, and right up to that point I was assured that there would be medical testimony and that there would be liability testimony, and that was the posture of the case this morning, and I told Mr. Chaconas that based on the fact that I assumed they would have the medical testimony here and I found out they did not, that there was not any reason for me to go on record in this case, and that is how my name came into this case.

THE COURT: In June when I set this case for trial Mr. Watson said that he was then requesting to withdraw. I wouldn't let him withdraw. I told him he would have to tell his client that the case was definitely going to be tried on September 12, and that if he had to get other counsel that there were two months left for him to get counsel, at least, three months, and so the Plaintiff, insofar as counsel is concerned, is not blameless in this matter.

He has known for some time that the case was going to be tried today with or without Mr. Watson, and there was no reason that he could not have notified his Doctors as early as June and ascertained then their availability.

MR. CHACONAS: .    .    .    .    We have tried in this case to get counsel. We have

present action was instituted on April 16, 1971, and the defendant's answer was timely filed. Interrogatories propounded to the plaintiff on July 15, 1971, were not answered until five months later and then in response to the threat of a motion which had been filed by the defendant to dismiss the action for failure to answer the interrogatories. The first pretrial conference, scheduled for December 17, 1971, was continued on motion of plaintiff's counsel and an order was entered at that time providing *that all discovery should be completed by February 1.*

On December 22 notice was given by the defendant to take plaintiff's discovery deposition but the deposition was not filed until March 2, 1972, and the reason for this delay does not appear in the record. On June 15, 1972, the case came on for formal pretrial and at that time the court was definite and positive in ordering that the case should be tried on September 12, 1972, before a jury. Attempts on the part of plaintiff's counsel to obtain a continuance were made on September 7, five days before the trial date, but the request was denied and the court reminded counsel that at the pretrial conference on June 15, the case had been definitely set for jury trial beginning on September 12. On the morning of September 12 further efforts were made to secure a continuance and the details of the proceedings appear in the transcript thereof set forth *ante* in footnote 1.

The local rules of the district court provide that an out-of-state attorney may not engage in litigation in the Eastern District of Virginia unless he has associated himself with local counsel. Mr. Watson, local counsel, appeared in the case, instituted the action and, with other counsel, signed the complaint. Approximately one year following the institution of the action a request was made of the court to permit Mr. Watson and Mr. D'Agaris, a Maryland attorney, to withdraw as counsel for the plaintiff. The reason for the request for permission to withdraw is not disclosed by the record. The court refused the request unless other local counsel should enter an appearance to replace Mr. Watson. Not until September 7 did Mr. Harrigan, a local attorney, appear and a motion for a continuance was made so that on the very eve of the trial new counsel could prepare. The court insisted that in June the trial date had been definitely fixed as September 12 and denied the request for continuance, at which time Mr. Harrigan declined to formally enter an appearance. On the trial date the motion for continuance was made by plaintiff's counsel on the ground that they had been unable to secure the attendance of medical witnesses, but it was certainly apparent to the court that the witnesses had not been subpoenaed and that no serious effort had been made by counsel to procure their attendance. It was stated to the court that late in the night preceding the trial date local counsel determined that no doctors would be available for trial and "I informed Mr. Chaconas, informed the Clerk the monies were available for the Doctor's fees. . . ." The time when the so-called fees were made available and the amount thereof are not disclosed.

No citation of authority is needed to support the premise that district courts must have control of their dockets without disruption or interference in order to assure the orderly conduct of the court's business. I take judicial notice of the fact that the Eastern District of Virginia is an extremely busy district; the dockets of the Alexandria Division, in which this litigation arose, are overburdened with cases involving litigants who are often anxiously and impatiently awaiting the opportunity to have their "turn at bat"—to have their day in

---

tried for the medical testimony but circumstances or events have just come about that it was an impossible situation. That is why we made our motion for a continuance.

court. The rapidly developing policy of the judicial system looks with disfavor upon counsel's lack of diligence or negligence in preparing cases for trial. The court is in position to get the "feel" of the case and to appraise the attitude of counsel toward the diligent prosecution of the litigation.

In Vindigni v. Meyer, 441 F.2d 376 (2 Cir. 1971), the Court of Appeals, in effect, reversed the district court's dismissal of the plaintiff's action for failure to prosecute. Understandably, the reversal there was grounded upon the unusual fact of the complete disappearance of plaintiff's attorney. The court said, at page 378,

> "In reversing the order in this case, we do not depart from the regular course of our decisions upholding discretionary orders of dismissal for failure to prosecute. [Cited cases omitted.] The facts here are readily distinguishable from the facts in those decisions."

The court, in States Steamship Company v. Philippine Air Lines, 426 F.2d 803, 804 (9 Cir. 1970), had this to say:

> "Whether the judge misused or abused his discretion, of necessity, depends upon the facts of each case. This court has never attempted to fix guidelines, although a good rule of thumb might be to follow Judge Magruder's oft-quoted phrase in In Re Josephson, 218 F.2d 174, 182 (1st Cir. 1954), that the exercise of discretion of the trial judge should not be disturbed unless there is 'a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'
> . . . . "

In Thompson v. Fleming, 402 F.2d 266 (5 Cir. 1968), the court found no abuse of discretion on the part of the district judge who dismissed plaintiff's action. There an attorney, who had filed a written notice of appearance for plaintiff, moved for a continuance on the ground that other counsel who had signed the complaint and who had taken the deposition had not been able to prepare for trial due to pressing business matters. It was held that the action of the trial court, in denying a motion for continuance, in directing that the trial proceed, in dismissing the action, albeit without prejudice, when plaintiff's counsel declined to proceed, was not an abuse of discretion.

In an action for damages for personal injuries, Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1961), it appears that after extended pretrial proceedings which delayed the maturing of the case the trial court, on September 29, 1960, scheduled a pretrial conference for one o'clock on October 12, 1960, and notified counsel for both sides. Late in the morning of October 12 plaintiff's counsel telephoned the judge's secretary that he was otherwise engaged in another city, that he could not attend the conference at the appointed hour but that he would be there on the afternoon of October 13 or anytime on October 14 if the pretrial conference could be reset. When plaintiff's counsel failed to appear on October 12 the court, *sua sponte*, dismissed the action for failure of counsel to appear and for failure to prosecute. The Court upheld the action of the trial court, even in the absence of a motion to dismiss, and at pages 633 and 634, 82 S.Ct. at page 1390 stated:

> "On this record we are unable to say that the District Court's dismissal of this action for failure to prosecute, as evidenced only partly by the failure of petitioner's counsel to appear at a duly scheduled pretrial conference, amounted to an abuse of discretion. It was certainly within the bounds of permissible discretion for the court to conclude that the telephone excuse offered by petitioner's counsel was inadequate to explain his failure to attend. And it could reasonably be inferred from his absence, as well as from the drawn-out history of the litigation, . . . that petitioner had been de-

liberately proceeding in dilatory fashion."

"There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' Smith v. Ayer, 101 U. S. 320, 326, 25 L.Ed. 955."

Lack of diligence of plaintiff and his counsel in the preparation of the instant case and in complying with the court's orders and directions is evident. We have no satisfactory information as to the problems confronting the court with respect to granting a continuance, but I venture the statement that if every plaintiff-litigant requested a continuance on the date fixed for the trial of his case and refused to proceed any attempt by the court to maintain the orderly control of its business would be an exercise in futility. No court can succeed if it permits the lawyers, officers of the court, to control the dockets and the court's business.

In the case at bar it is argued, and the majority holds, that the negligent conduct of plaintiff's counsel should not operate to the disadvantage and prejudice of their client. However, the district court noted that the plaintiff himself was not blameless:

"THE COURT: In June when I set this case for trial Mr. Watson then said that he was then requesting to withdraw. I wouldn't let him withdraw. I told him he would have to tell his client that the case was definitely going to be tried on September 12, and that if he had to get other counsel that there were two months left for him to get counsel at least, three months, and so the Plaintiff, insofar as counsel is concerned, is not blameless in this matter.

"He has known for some time that the case was going to be tried today with or without Mr. Watson, and there was no reason that he could not have notified his Doctors as early as June and ascertained then their availability." (Fn. 1 *ante*.)

As the late Judge Sobeloff, in considering a motion under Federal Rules of Civil Procedure 60(b)(1) to set aside a summary judgment, wrote in Universal Film Exchanges, Inc. v. Lust, 479 F.2d 573, 577:

"Our decision does not leave a client without remedy against the negligent attorney. Lawyers are not a breed apart. Where damages are inflicted upon innocent clients by other professionals, such as doctors or dentists, the remedy is a suit for malpractice. The same is true where damage is inflicted upon a client through an attorney's professional negligence. Indeed, the Supreme Court explicitly pointed out in *Link, supra*, 370 U.S. 626, 82 S.Ct. 1386 at n. 10, that if the attorney's conduct was substantially below what was reasonable under the circumstances, the client's remedy was a suit for malpractice. *See, also,* Schwarz v. United States, 384 F.2d 833 (2 Cir. 1967)."

Upon this record I am not convinced that there was a clear abuse of the court's discretion in granting the defendant's motion to dismiss under Rule 41(b).