**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 22-1576

———————

CADET CONSTRUCTION COMPANY,

Plaintiff - Appellant,

v.

ARCHER WESTERN CONSTRUCTION, LLC; TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

Defendants - Appellees.

———————

Appeal from the United States District Court for the Middle District of North Carolina, at
Greensboro. Catherine C. Eagles, Chief District Judge. (1:20-cv-00737-CCE-LPA)

———————

Submitted: April 26, 2023                    Decided: August 18, 2023

———————

Before GREGORY, AGEE, and WYNN, Circuit Judges.

———————

Vacated and remanded by unpublished per curiam opinion.

———————

**ON BRIEF:** Todd A. Jones, ANDERSON JONES, PLLC, Raleigh, North Carolina, for
Appellant. Andrew P. Atkins, Mark M. Rothrock, SMITH, ANDERSON, BLOUNT,
DORSETT, MITCHELL & JERNIGAN, L.L.P., Raleigh, North Carolina, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Cadet Construction Company ("Cadet") appeals from the district court's judgment dismissing its claims with prejudice for failure to prosecute. In finding that dismissal with prejudice was necessary, the district court focused on Cadet's failure to assist with efforts to schedule and complete arbitration over a period of several months. We hold that the dismissal constitutes an abuse of discretion because the district court did not properly account for extenuating circumstances that contributed to the delays—namely, severe health issues that Cadet's Senior Vice President suffered during the period of time in question. We therefore vacate the judgment below and remand for further proceedings.

I.

Cadet initiated this action against Archer Western Construction, LLC ("AWC") and Travelers Insurance Company ("Travelers") (collectively, "Defendants") in August 2020, alleging causes of action for claim on a payment bond, breach of contract, and *quantum meruit*. Cadet claimed that AWC, the contractor on a construction project, and Travelers, AWC's surety, failed to pay Cadet, a subcontractor, over $1 million for work it performed. AWC filed a counterclaim against Cadet for breach of contract.

In December 2020, Cadet and Defendants jointly moved to refer the claims to arbitration. The district court granted their motion and stayed the proceedings until January 3, 2022. Pursuant to an arbitration agreement, the parties first engaged in mediation in February 2021, but mediation did not result in a settlement. From March to August, they

2

participated in discussions about selecting an arbitrator, mutually agreeing to extend the deadline for naming an arbitrator several times.

In May 2021, Jimmy Dillahunt, Cadet's Senior Vice President, was diagnosed with cancer. Dillahunt underwent surgery in July and "spent most of the remainder of 2021" in recovery. J.A. 228. In an affidavit Cadet later submitted to the district court, Dillahunt explained that his diagnosis, treatment, and recovery "required [him] to take time away from the business of Cadet, including the direction of legal action . . .[,] to care for [his] personal health." *Id.* He further explained that he is the "only office personnel" at the company and is "solely responsib[le] for the business decisions of Cadet, including those which pertain to legal action." J.A. 227–28.

The parties tentatively selected an arbitrator in August 2021. Their arbitration agreement required them to split the costs of arbitration equally. After the arbitrator provided his hourly rate, Defendants formally approved his selection, but Cadet did not.

On September 8, 2021, Cadet's counsel filed a motion to withdraw on the ground that Cadet had failed to pay reasonable attorneys' fees for more than six months. Cadet's counsel also asked the court to extend the end date of the stay from January 3, 2022, to June 3, 2022. Defendants did not object to the motion to withdraw or the motion to extend the stay.

On October 13, the district court granted Cadet's counsel's motion to withdraw. It directed Cadet to obtain new counsel and have them file a notice of appearance within thirty days, noting that "[f]ailure to do so may result in dismissal of this case without prejudice." J.A. 168. The court denied Cadet's motion to extend the stay; in its view, "an

3

extension of that length would cause an unwarranted delay," and Cadet had failed to offer any "valid reason for such a lengthy extension." J.A. 169.

Cadet retained new counsel, who filed a notice of appearance on November 12, exactly thirty days after the court's order. Defendants claim that Cadet's counsel did not respond to their emails about the case until the third week of December, when Cadet asked if Defendants would agree to a status report stating that the parties had formally selected the arbitrator and were moving forward. Cadet and Defendants filed a joint status report on January 3, 2022, which informed the district court that they had selected an arbitrator and were "working to establish a definite schedule for the arbitration." J.A. 171. They also asked the court to continue the stay, which was set to end on January 3.

On January 5, the district court entered an order that extended the stay through April 14, 2022. The order stated that the court "expect[ed] the parties to immediately schedule the arbitration for a time within the first quarter of this year and to timely complete it." J.A. 174. The court explained that it would dismiss the case "without prejudice" around April 15, 2022, if the parties did not file a motion by March 31 that showed "good cause for why a continued stay rather than dismissal is appropriate." *Id.*

Defendants assert that in early January, its attorneys twice contacted Cadet's attorneys to try to move the arbitration forward, but Cadet's attorneys did not respond. On March 15, after receiving no communication from Cadet, Defendants filed a motion to lift the stay so they could file a Rule 41(b) motion to dismiss *with* prejudice. Cadet's attorneys contacted Defendants' attorneys only after Defendants filed the motion to lift the stay. The court lifted the stay for that limited purpose, and Defendants filed a motion to dismiss. In

4

its response to that motion, Cadet conceded that dismissal *without* prejudice was appropriate, but argued that the court should not dismiss *with* prejudice. Cadet did not ask the court to extend the stay beyond April 14.

Cadet submitted Dillahunt's affidavit along with its response to the motion to dismiss. In addition to recounting his cancer diagnosis and treatment, Dillahunt explained that he struggled with a severe case of COVID-19 at the turn of the year. He experienced severe respiratory symptoms and was ultimately diagnosed with COVID pneumonia on January 11. Dillahunt received several forms of treatment for the illness and "suffered from continued severe respiratory symptoms" through early March. J.A. 229. Cadet's response to the motion to dismiss was the first time the company argued that Dillahunt's illness had prevented it from proceeding with the arbitration.[1]

On April 27, the district court granted Defendants' motion and dismissed the case with prejudice. To determine whether dismissal with prejudice was an appropriate sanction, the court applied the four-factor test the Fourth Circuit has articulated, looking to: "(1) the degree of personal responsibility on the part of the plaintiff, (2) the amount of prejudice to the defendant caused by the delay, (3) the presence or absence of a drawn out history of deliberately proceeding in a dilatory fashion, and (4) the effectiveness of sanctions less drastic than dismissal." J.A. 244 (quoting *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978)) (internal quotation marks omitted).

---

[1] Defendants note that "Dillahunt's medical condition was briefly mentioned near the time of the withdrawal of Cadet's prior counsel" in September 2021, J.A. 232, but neither party provides further information about that disclosure.

5

The district court found that all four factors favored dismissal, placing particular emphasis on Cadet's inaction in the months following the court's January 2022 order. In reaching that conclusion, the court rejected Cadet's argument that its inaction was the result of Dillahunt's health issues and beyond the company's control. As the court saw it, dismissal with prejudice was "necessary" "to appropriately take into account Cadet's disregard of its own promises and representations to the Court and of the Court's clear and specific directions" in the January order. J.A. 247.

After the district court dismissed Cadet's claims, AWC moved to voluntarily dismiss its counterclaim with prejudice. The court granted that motion while permitting AWC to renew its counterclaim if Cadet successfully appealed the dismissal of its claims. The district court entered final judgment on May 18, 2022, and Cadet timely appealed.

## II.

We review a district court's decision to dismiss a case for failure to prosecute for abuse of discretion. *See Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018) (citation omitted). When applying the abuse-of-discretion standard, "this Court may not substitute its judgment for that of the district court; rather, it must determine whether the district court's exercise of discretion, considering the law and the facts, was arbitrary or capricious." *United States v. Vidacak*, 553 F.3d 344, 348 (4th Cir. 2009) (cleaned up).

6

III.

As the district court recognized, courts must consider four factors when determining whether a plaintiff's dilatory conduct warrants dismissing its claims with prejudice. Those factors are (1) the plaintiff's degree of personal responsibility for the delay; (2) the prejudice the delay caused to the defendant; (3) whether the plaintiff has "a history of deliberately proceeding in a dilatory fashion"; and (4) whether a less severe sanction would be appropriate. *Ballard*, 882 F.2d at 95. These factors "are not a rigid four-prong test," and the propriety of dismissal with prejudice "depends on the particular circumstances of the case." *Id.*

This Court has explained that dismissal with prejudice is a "harsh sanction which should not be invoked lightly in view of the sound public policy of deciding cases on their merits." *Herbert v. Saffell*, 877 F.2d 267, 269 (4th Cir. 1989) (cleaned up). To that end, the district court must be "careful" in exercising its "judicial discretion" before dismissing with prejudice. *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974); *Bush v. U.S. Postal Serv.*, 496 F.2d 42, 44 (4th Cir. 1974). Dismissal with prejudice "should be resorted to only in extreme cases," *McCargo v. Hedrick*, 545 F.2d 393, 396 (4th Cir. 1976), where there is "a clear record of delay or contumacious conduct by the plaintiff," *Reizakis*, 490 F.2d at 1135, or where the plaintiff "fail[s] to respond to a specific directive from the trial court," *Attkisson v. Holder*, 925 F.3d 606, 625 (4th Cir. 2019) (cleaned up).

We address the district court's analysis of each factor in turn.

A.

The district court found that Cadet "bears all responsibility for the delays over the last ten months and for the failure to complete the arbitration," and thus concluded that the

first factor "heavily weighs towards dismissal with prejudice." J.A. 245. In making that finding, the district court did not give due consideration to the role that Dillahunt's severe health issues—a development outside of Cadet's control—played in the delays, particularly in early 2022. As a result, the court overstated Cadet's level of culpability for those delays.

The district court, of course, did not dismiss the case with prejudice in January 2022, despite the delays that had occurred up to that point. Further, the court's January order expressly stated that the court would dismiss the case "*without* prejudice" if delays persisted and the parties failed to show good cause for extending the stay beyond April 14, 2022. J.A. 174 (emphasis added). It is clear, then, that Cadet's failure to respond to Defendants' communications between January and March 2022 was critical to the court's change of position in April. In deciding to dismiss with prejudice, the court emphasized that "Cadet ha[d] done nothing" "[d]espite [the January] Order and Cadet's representations that it was ready to move the case forward." J.A. 247.

To be sure, Cadet's inaction in early 2022 was inconsistent with its representation in the January 3 status report that it was prepared to proceed with arbitration. But to the extent that Cadet failed to comply with the district court's January order, the order itself specified that such a failure would result only in dismissal *without* prejudice. And the fact that Cadet's inaction coincided with the period when Dillahunt was suffering from a severe case of COVID pneumonia cuts against characterizing the inaction as deliberate or "contumacious." *Reizakis*, 490 F.2d at 1135. In his affidavit, Dillahunt explained that "[b]etween January 11, 2022 and March 5, 2022, [he] suffered from continued severe

8

respiratory symptoms as a result of the COVID Pneumonia diagnosis," and that his condition "required [him] to take time away from the business of Cadet, including the direction of legal action such as this case." J.A. 229.

The district court offered a few reasons why Dillahunt's medical condition did not excuse Cadet from shouldering full blame for the delays, but none is convincing. For one, the court characterized Dillahunt's cancer- and COVID-related health issues as "sporadic" and pointed out that Dillahunt had been able to work some of the time. J.A. 245. It also suggested that Dillahunt could have delegated some scheduling and administrative tasks related to the arbitration to another corporate officer, yet failed to do so. Even if we accept both premises, it does not necessarily follow that Cadet deliberately engaged in dilatory conduct. It seems self-evident that a company might struggle to communicate with its attorneys and opposing litigants when its "only office personnel" is battling a life-threatening illness for several months. J.A. 227.

In addition, the district court seemed to fault Cadet for not raising Dillahunt's health issues until after Defendants moved to dismiss in March 2022. But that should not weigh heavily against Cadet. Dillahunt's severe COVID and COVID pneumonia symptoms appeared right around the time the district court issued the January 2022 order extending the stay to April. While Cadet could have been more proactive in informing the court about Dillahunt's condition, the court did have that information when it considered Defendants' motion to dismiss.

We agree that Cadet likely was capable of taking some action to advance the arbitration in early 2022, even with Dillahunt severely ill. Even so, Dillahunt's health

issues were at least a contributing factor for that period of delay, and one that was well beyond Cadet's control. When one considers the full context for Cadet's inaction in early 2022, it becomes difficult to identify any deliberate dilatory conduct.

## B.

The second factor—the prejudice Defendants suffered as a result of Cadet's delays—carries very little weight in this case.[2] Defendants do not allege much prejudice beyond the generalized risks of harm that accompany any delay in litigation: the risk that memories will fade, witnesses will become inaccessible, and evidence will be lost. They do mention the additional possibility that Cadet's "precarious financial condition [] would very likely preclude recovery as time dragged on." Resp. Br. at 27. But this is speculative; Cadet obtained new counsel and agreed to appoint an arbitrator in late 2021, and there is no indication that the company is presently incapable of paying the costs related to the arbitration and litigation. Further, as the district court recognized, AWC's inability to pursue its counterclaim during the period of delay has little bearing on the prejudice analysis, as AWC was willing to voluntarily dismiss that claim.

## C.

The third factor asks whether the plaintiff has a "drawn out history of deliberately proceeding in a dilatory fashion." *Davis*, 588 F.2d at 70 (cleaned up). This factor largely

---

[2] Cadet argues that the Fourth Circuit, in cases involving dismissal with prejudice, applies a "strict definition of prejudice" that permits dismissal only if the delays caused the opposing party "irreparable" harm. Opening Br. at 15. This misstates the case law, which instructs that that the lack of prejudice to the defendant is "not a bar to dismissal" (though it does weigh against it). *Reizakis*, 490 F.2d at 1135; *see Hillig v. C.I.R.*, 916 F.2d 171, 174 (4th Cir. 1990).

rises and falls with the first factor, as it favors dismissal only if the plaintiff's dilatory actions were deliberate. *See McCargo*, 545 F.2d at 396 (not analyzing history-of-delay factor after concluding that delays were not deliberate). As we have already discussed, Dillahunt's severe health issues in early 2022 militate against treating Cadet's inaction during that period as intentional. Moreover, the Fourth Circuit has held that a party's lack of communication during a three-month period—about the same length of time as here—did "not support a conclusion that the delay was deliberate." *Hillig*, 916 F.2d at 174.

To be sure, Cadet is not blameless for the delays that occurred between August 2021 and March 2022, particularly those related to the company's failure to pay its previous counsel in 2021. But after retaining new counsel in November 2021, Cadet showed signs of cooperating with Defendants to move the arbitration forward—even if that progress was somewhat slow. And, again, the district court's January 2022 order never implied that the first quarter of 2022 would be Cadet's last chance to avoid dismissal with prejudice. *Cf. Ballard*, 882 F.2d at 95–96 (holding that court's "explicit warning that a recommendation of dismissal [with prejudice] would result from failure to obey his order" was a "critical fact" supporting dismissal). To the contrary, the January order explicitly stated that further delays would result only in dismissal without prejudice.

D.

Turning to the fourth and final factor, "[a]ppellate courts frequently have found abuse of discretion when trial courts failed to apply sanctions less severe than dismissal." *Reizakis*, 490 F.2d at 1135. Before dismissing a case with prejudice, the district court needs to consider "the effectiveness of sanctions less drastic than dismissal." *Davis*, 588 F.2d at 70. Here, the

11

district court considered the alternative sanction of dismissal without prejudice, but ultimately concluded that dismissal with prejudice was "necessary" in light of Cadet's inaction following the January order.  J.A. 247.  In the court's view, those couple of months of inaction created doubts that Cadet would "ever be serious about prosecuting its claims." *Id.*

That finding, too, failed to account for the record facts about Dillahunt's illness. Dillahunt's affidavit indicates that his severe COVID pneumonia symptoms subsided in March, so there is reason to believe that Cadet would be more responsive moving forward. At the very least, Dillahunt's serious health issues undermine the court's conclusion that this is one of the "extreme cases" in which dismissal with prejudice is appropriate. *McCargo*, 545 F.2d at 396.  A without-prejudice dismissal would allow Cadet to refile its claims and pursue arbitration if it has the capacity to do so, without punishing the company for delays that were not entirely within its control to prevent.[3]

## IV.

We recognize that the district court has discretion to control its docket and prevent undue delays in litigation.  *See Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962).  At the same time, though, dismissal with prejudice "is not a sanction to be invoked lightly." *Ballard*, 882 F.2d at 95 (Powell, J.).  Although it considered the relevant factors, the district court resorted to that harsh sanction with little notice to Cadet, and without "careful" consideration of the facts that counseled against it.  *Reizakis*, 490 F.2d at 1135.  For these

---

[3] If, on remand, the district court decides to extend the stay rather than dismiss Cadet's claims without prejudice, we note that any further dilatory action by Cadet would very likely warrant a dismissal with prejudice.

12

reasons, we hold that the district court abused its discretion in dismissing Cadet's claims with prejudice. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid the decisional process.

*VACATED AND REMANDED*