KING, Circuit Judge:
 

 Plaintiffs Sharyl Thompson Attkisson, James Howard Attkisson, and Sarah Judith Starr Attkisson appeal from the dismissal with prejudice of their claims in the Eastern District of Virginia. The plaintiffs sued a number of named and unnamed government officials for alleged illegal intrusions into the plaintiffs' electronic devices to conduct unlawful surveillance, and also sued certain corporate entities for allegedly facilitating those intrusions. After three-and-a-half years of protracted preliminary litigation - including multiple amendments to the complaint - the district court dismissed the plaintiffs' claims. As explained below, we are satisfied to affirm the judgment.
 

 I.
 

 A.
 

 The district court dismissed the majority of the plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. That ruling addressed the claims raised in the plaintiffs' consolidated complaint.
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364 (E.D. Va. Sept. 15, 2017), ECF No. 117 (the "Consolidated Complaint"). In reviewing that dismissal we accept and recite the facts alleged in the Consolidated Complaint in the light most favorable to the plaintiffs.
 
 See
 

 Lucero v. Early
 
 ,
 
 873 F.3d 466
 
 , 469 (4th Cir. 2017).
 

 The district court then disposed of the balance of the plaintiffs' claims as presented in their amended consolidated complaint.
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364 (E.D. Va. Feb. 5, 2018), ECF No. 174 (the "Amended Complaint"). The court based that ruling partly on Rule 12(b)(6), and otherwise on various procedural defects relating to the Amended Complaint. To properly review that final decision, we recite the pertinent facts alleged in the Amended Complaint as well as the procedural history of this litigation.
 
 See, e.g.
 
 ,
 
 Ballard v. Carlson
 
 ,
 
 882 F.2d 93
 
 , 94 (4th Cir. 1989) (providing "full statement of the facts," including procedural history, to review dismissal for procedural defects).
 

 1.
 

 a.
 

 At all relevant times, plaintiff Sharyl Thompson Attkisson ("Attkisson") was an investigative reporter for CBS News. Plaintiffs James Howard Attkisson and Sarah Judith Starr Attkisson are Attkisson's husband and daughter, respectively. In early 2011, as alleged in the Consolidated Complaint, Attkisson worked on the CBS News investigation into "Operation Fast and Furious," an ill-fated sting operation of the Bureau of Alcohol, Tobacco, and Firearms (the "ATF"). Intended as a means to sweep up gun traffickers and drug cartel members at the southern border, Operation Fast and Furious involved the circulation of thousands of firearms by the ATF that were to be traced and recaptured along with their purchasers. The ATF, however, lost track of a large number of those weapons, one of which was used to kill a Border Patrol Agent in 2010. Attkisson's highly critical report of the Operation aired on CBS on February 22, 2011. Over the course of that year, Attkisson continued reporting on Operation Fast and Furious, in the face of efforts by the ATF, the Federal Bureau of Investigation (the "FBI"), and the Department of Justice (the "DOJ") to stymie her reporting.
 
 [1]
 
 The story surrounding the Operation grew to include alleged problems with then-Attorney General Eric Holder's testimony (apparently before Congress), as well as the DOJ's retraction of a letter to Congress that contained misinformation about the Operation.
 

 In "mid-to-late 2011," the plaintiffs noticed "anomalies" in several electronic devices at their home in Leesburg, Virginia.
 
 See
 
 Consolidated Complaint ¶ 23. Specifically, a laptop and desktop computer began "turning on and off at night," the house alarm went off without provocation, and the plaintiffs experienced phone and television interference.
 
 Id
 
 . The plaintiffs' devices relied on a Verizon FiOS line that provided phone, internet, and television services to their home. The problems with those devices continued through 2012, despite Verizon's attempts to cure them.
 

 Meanwhile, Attkisson continued her work for CBS. In October 2012, Attkisson reported on the September 2012 attacks on our Embassy in Benghazi, Libya. Her reporting on those attacks criticized the actions of the Obama administration, drawing on confidential sources in the federal government.
 

 In December 2012, the plaintiffs asked an acquaintance "with U.S. government intelligence experience" to examine their home.
 
 See
 
 Consolidated Complaint ¶ 43. That acquaintance found an extra fiber optics cable dangling from the plaintiffs' Verizon FiOS box. When Attkisson called Verizon to ask about the cable, a Verizon representative denied any knowledge of it and suggested that Attkisson contact law enforcement. Soon thereafter, an individual identifying herself as a Verizon employee called Attkisson and said she would send a technician to the plaintiffs' home. The next day - January 1, 2013 - a person "represented to be a Verizon technician" removed the cable.
 
 Id
 
 . ¶ 44. Attkisson
 later attempted to contact that technician but was unsuccessful. Through January and February 2013, the plaintiffs continued to experience phone and internet problems that Verizon could not solve.
 

 On January 8, 2013, Attkisson gave her Toshiba laptop (used for her work for CBS) to an expert to conduct a forensic analysis of the machine. That expert found evidence of an unauthorized intrusion, possibly using software belonging to a government actor. Attkisson reported the expert's findings to CBS, which retained another expert to examine Attkisson's work laptop and home desktop computers. Based on the forensic analysis conducted by the CBS-retained expert, the plaintiffs allege that their desktop, smart phone, and Attkisson's work laptop were the "targets of unauthorized surveillance efforts," beginning around June 2011.
 
 See
 
 Consolidated Complaint ¶¶ 27, 48-49. That analysis also showed that someone had installed "surveillance spyware" on Attkisson's work laptop around February 2012 and "executed remote actions" to remove evidence of the surveillance around December 2012.
 
 Id
 
 . ¶¶ 27, 42.
 

 In March 2013, the plaintiffs' desktop began malfunctioning and finally shut down for good. In September 2013, Attkisson "observed" that her personal laptop, a MacBook Air, was "accessed remotely, controlled, and [unspecified] data deleted."
 
 See
 
 Consolidated Complaint ¶ 57. The plaintiffs did not obtain any expert analysis of the MacBook, but they allege that some of the intrusions described heretofore were executed "via an IP address owned, controlled, and operated by" the United States Postal Service (the "USPS").
 
 Id
 
 . ¶ 27.
 

 In mid-2013, Attkisson and CBS announced publicly that her personal devices had been accessed and compromised. Attkisson also filed a complaint with the Inspector General for the DOJ. In response, the FBI and DOJ privately and publicly affirmed that they had no knowledge of any intrusions into the plaintiffs' devices. The DOJ Inspector General asked to examine the affected computers. CBS declined to release Attkisson's work laptop, but Attkisson provided her home desktop to the Inspector General. In early 2015, the Inspector General released a report that "noted a great deal of advanced mode computer activity not attributable" to the plaintiffs, but concluded that there was "no evidence of intrusion" into the desktop.
 
 See
 
 Consolidated Complaint ¶ 60.
 

 b.
 

 The Consolidated Complaint, filed in September 2017, named as defendants Eric Holder, the Attorney General at all relevant times; Patrick R. Donahoe, the Postmaster General during the relevant period; and "unknown named agents" of the DOJ, the USPS, and "the United States."
 
 See
 
 Consolidated Complaint 1. In addition to describing the events recited above, the Consolidated Complaint offers a variety of allegations to link those events to the defendants listed therein.
 

 Regarding the defendant "unknown named agents," or "John Doe agents," the Consolidated Complaint provides almost no direct allegations concerning those agents' actions. Instead, it asserts that unnamed agents "are in some manner responsible and liable for" the acts alleged by the plaintiffs, that is, the intrusions into their personal electronic devices.
 
 See
 
 Consolidated Complaint ¶ 11.
 

 The Consolidated Complaint also points to a number of policy-level initiatives undertaken by the FBI and DOJ concerning electronic surveillance, presumably to support the claim that employees of those agencies carried out the alleged intrusions. For example, in 2012, the FBI and
 DOJ jointly announced a "new effort" to address "national security-related cyber issues," while simultaneously seizing "personal and phone records belonging to journalists from the Associated Press."
 
 See
 
 Consolidated Complaint ¶ 30. The Consolidated Complaint does not allege, however, that those seizures were unlawful, and later references the DOJ's use of search warrants to investigate internal leaks to the media.
 
 Id.
 
 ¶¶ 30, 72(Z), 72(AA). Later in 2012, the DOJ provided training for the National Security Cyber Specialists Network, as well as the computer crime unit in the DOJ's Criminal Division. Regarding the role of the USPS, the plaintiffs allege that the USPS has a "working relationship with the FBI, Department of Homeland Security, and DOJ for domestic surveillance projects."
 
 Id
 
 . ¶ 63.
 

 The Consolidated Complaint also references emails released by Wikileaks (no longer available online), in which members of a "global intelligence company doing business with government agencies" discussed a perceived White House "witch hunt[ ] of investigative journalists."
 
 See
 
 Consolidated Complaint ¶ 33. Finally, that Complaint alleges that in November 2012, the FBI "initiated a body of cyber security case investigations that would later relate to the illegal intrusions" into the plaintiffs' devices.
 
 Id
 
 . ¶ 39. It is unclear what those investigations entailed, what relationship they had to the plaintiffs or the intrusions into their devices, and who or what was the focus of the FBI's inquiry. The Consolidated Complaint also alleges that the "FBI investigation involving Ms. Attkisson's computer intrusions was circulated to the DOJ's national cyber security group" in late 2012.
 
 Id.
 
 ¶ 59.
 

 With respect to Attorney General Holder's personal involvement, the Consolidated Complaint identifies a number of public statements that purportedly show that Holder knew of (unrelated) illegal surveillance conducted by the National Security Agency (the "NSA"). It references a DOJ report regarding revisions to DOJ policies, including changes that restricted the circumstances in which the DOJ would seek to seize a journalist's work product. The Consolidated Complaint asserts that Holder was personally involved in what it characterizes as illegal surveillance of a reporter named James Rosen in 2010, though it also alleges that Holder signed off on search warrants concerning individuals in the media at that time. Lastly, the Consolidated Complaint alleges that Holder discussed Attkisson's reporting on Operation Fast and Furious; that he directed an aide to call a CBS News anchor and tell him to "get a 'handle' on [Attkisson's] reporting"; and that Holder used "DOJ assets" to work with "smear machines like Media Matters to attack reporters," including Attkisson.
 
 See
 
 Consolidated Complaint ¶ 72(Q)-(T), (W).
 
 [2]
 

 With regard to Postmaster Donahoe's involvement in the foregoing events, the Consolidated Complaint alleges that he was ultimately responsible for any use of the USPS network, including the use of its IP addresses. That Complaint also generally alleges that USPS has cooperated with the DOJ and FBI in their investigations,
 including by unconstitutionally monitoring mail.
 

 2.
 

 The Amended Complaint, filed in February 2018, added as defendants, inter alia, MCI Communications Services, Inc., d/b/a Verizon Business Services; Cellco Partnership d/b/a Verizon Wireless; and Verizon Virginia LLC (collectively, the "Verizon defendants," or "Verizon"). The central factual allegations in the Amended Complaint mirror those provided in the Consolidated Complaint. With respect to the Verizon defendants and their involvement in the intrusions into the plaintiffs' personal devices, the Amended Complaint offers the following allegations:
 

 • That Verizon provided the plaintiffs' phone, internet, and television services through the Verizon FiOS cable installed in their home;
 

 • That Verizon made various attempts to resolve the anomalies with the plaintiffs' electronic devices and failed, as discussed above;
 

 • That someone purporting to be a Verizon technician removed an extra FiOS cable from the plaintiffs' home, as discussed above;
 

 • That the FBI's Telephone Telecommunications Intercept and Collection Technology Unit has the capacity to interface with Verizon's network infrastructure; and
 

 • That government agents used Verizon's network to unlawfully access Attkisson's work laptop.
 

 See
 
 Amended Complaint ¶¶ 31, 33, 38-39, 54-57, 81-82, 84.
 

 B.
 

 1.
 

 These proceedings began in December 2014, when the plaintiffs sued Attorney General Holder, Postmaster Donahoe, and the John Doe agents in the Superior Court of the District of Columbia. The plaintiffs' Superior Court complaint included First and Fourth Amendment claims based on the electronic intrusions described above. In February 2015, Holder and Donahoe removed the lawsuit to the district court for the District of Columbia.
 

 On February 23, 2015, the plaintiffs sought expedited discovery in the District of Columbia, requesting "limited, immediate discovery" to "determine the true identifies [sic] of the Doe Defendants."
 
 See
 

 Attkisson v. Holder
 
 , No. 1:15-cv-00238 at 1 (D.D.C. Feb. 23, 2015), ECF No. 5. Because the plaintiffs failed to provide a more detailed explanation of such discovery, the district court denied their motion without prejudice.
 

 The plaintiffs renewed their expedited discovery motion on March 20, 2015. The renewed motion contained twenty-one interrogatories to be served on Holder, Donahoe, the USPS, and DOJ. The interrogatories contained broad requests, including for "[t]he identity of any person who has knowledge of existence and use of technology capable of remotely using a '
 
 kickstart'
 
 program between 2011-2013" to remove surveillance software from a personal computer.
 
 See
 

 Attkisson v. Holder
 
 , No. 1:15-cv-00238 at 4 (D.D.C. Mar. 20, 2015), ECF No. 21-1. The defendants opposed the plaintiffs' renewed discovery motion on April 6, 2015, and at the same time moved to dismiss the complaint. In response, the plaintiffs amended their complaint. The district court thus denied the motion to dismiss as moot.
 

 On July 3, 2015, the district court denied the plaintiffs' renewed motion to expedite discovery. First, the court observed that the plaintiffs had failed to comply with that court's Local Rule requiring the parties to
 meet and confer before seeking court intervention. The court also determined that the plaintiffs failed to meet the "good cause" standard for expedited discovery, primarily because their requests were "not narrowly tailored to discovering the identity of Doe defendants."
 
 See
 

 Attkisson v. Holder
 
 , No. 1:15-cv-00238 at 11 (D.D.C. July 3, 2015), ECF No. 34.
 

 Soon thereafter, the defendants renewed their motion to dismiss the then-operative complaint in the District of Columbia. In response, the plaintiffs voluntarily dismissed their claims against Holder and Donahoe without prejudice in August 2015. Because Holder and Donahoe had been the only named defendants in that complaint, the district court requested a "recommendation for future proceedings."
 
 See
 

 Attkisson v. Holder
 
 , No. 1:15-cv-00238 (D.D.C. Aug. 27, 2015). The plaintiffs responded by asserting that they intended to file a separate claim "against the named defendants and others" under the Federal Tort Claims Act (the "FTCA").
 
 See
 

 Attkisson v. Holder
 
 , No. 1:15-cv-00238 at 1 (D.D.C. Aug. 27, 2015), ECF No. 39. They also represented to the court that they were "in the process of serving" subpoenas on the USPS in an effort to identify the John Doe agents.
 
 Id
 
 . at 2. The plaintiffs thus requested "that no action be taken in this case" pending that discovery and the filing of their FTCA suit.
 
 Id
 
 . No further action occurred in the original District of Columbia lawsuit until October 2015, when the plaintiffs moved to compel the USPS to comply with their discovery efforts.
 

 Over the next several months, the plaintiffs and the Government litigated the plaintiffs' motion to compel, which was fully briefed by March 2016. No party took any action thereafter until July 28, 2016, when the district court consolidated the plaintiff's initial lawsuit with the FTCA complaint, pursuant to Federal Rule of Civil Procedure 42(a). The FTCA case - which the plaintiffs had filed in September 2015 - arose from the same facts as the initial lawsuit, and identified as defendants Holder, Donahoe, the John Doe agents, and the United States. In light of the change in named parties that was occasioned by consolidation, the court denied the plaintiffs' pending motion to compel as moot. On March 29, 2017, the consolidated lawsuit was transferred from the District of Columbia to the Eastern District of Virginia because the FTCA claims lacked venue in the District of Columbia. We thus turn to a review of the post-transfer events in the Eastern District of Virginia.
 

 2.
 

 a.
 

 After their consolidated lawsuit was transferred to the Eastern District of Virginia in March 2017, the plaintiffs' lawyers failed to notice their appearances there until April 21, 2017 - nearly a month later. The plaintiffs then took no action at all for three more months.
 

 On July 18, 2017, the case was reassigned from Judge Cacheris to Judge Brinkema, and the court ordered that any motion to dismiss the plaintiffs' claims be filed by early August 2017. The plaintiffs filed their first motion in the Eastern District of Virginia on July 26, 2017, moving for reconsideration of their most recent motion to compel discovery, which the District of Columbia court had denied as moot upon consolidating the two lawsuits. The plaintiffs' motion sought USPS records and a taped deposition of a USPS representative, to cover topics including, inter alia, "[a]ny and all records, logs, or other form of identification material that will or may assist in identifying" any persons with access to the IP address identified by the plaintiffs' forensic analysis.
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364 at 5 (E.D. VaJuly 26, 2017), ECF No. 91-1. On July 28, 2017, the plaintiffs amended their discovery request to cover information relating to a second IP address.
 

 On August 9, 2017, the defendants moved to dismiss the plaintiffs' claims for failure to state a claim. Defendants Holder and Donahoe also invoked a qualified immunity defense. On August 14, 2017, the defendants filed a joint opposition to the plaintiffs' motion for reconsideration, emphasizing the breadth of the plaintiffs' discovery requests, the high bar for granting motions for reconsideration, and reasserting the individual defendants' right to immunity.
 

 On September 1, 2017, the magistrate judge heard argument on the plaintiffs' motion to reconsider. After the hearing, the magistrate judge denied the reconsideration motion without prejudice "as to the subject matter of the discovery sought by plaintiffs," for reasons "stated from the bench."
 
 Attkisson v. Holder
 
 , No. 1:17-cv-00364 (E.D. Va. Sept. 1, 2017), ECF No. 107.
 

 On September 5, 2017, the district court entered a scheduling order, which established a discovery deadline of January 12, 2018. That same day, the plaintiffs responded to the motion to dismiss. A week later, in light of confusion among the parties concerning what constituted the operative complaint after the transfer to the Eastern District of Virginia, the court ordered the plaintiffs to file the Consolidated Complaint. It was filed on September 15, 2017.
 

 b.
 

 The Consolidated Complaint named as defendants Holder, Donahoe, and the John Doe agents. Notably, it did not name the United States as a defendant. It alleged the following claims: a First Amendment claim pursuant to
 
 Bivens v. Six Unknown Federal Narcotics Agents
 
 ,
 
 403 U.S. 388
 
 ,
 
 91 S.Ct. 1999
 
 ,
 
 29 L.Ed.2d 619
 
 (1971) (Count 1); a Fourth Amendment
 
 Bivens
 
 claim (Count 2); violations of the Electronic Communications Privacy Act (the "ECPA") (Count 3), the Stored Communications Act (the "SCA") (Count 4), the Computer Fraud and Abuse Act (the "CFAA") (Count 5), the Foreign Intelligence Surveillance Act ("FISA") (Count 6), and the Virginia Computer Crimes Act (Count 7); plus common law trespass (Count 8).
 

 The pending motion to dismiss the Consolidated Complaint was fully briefed by September 18, 2017, and the district court conducted a hearing on the dismissal motion on September 22, 2017. During the hearing, the lawyers thoroughly argued the motion to dismiss. The court also inquired about discovery issues:
 

 THE COURT: [T]here still are these John Does out there, and you still, I believe, have matters pending, or do you not, before [the magistrate judge] in terms of discovery requests?
 

 PLAINTIFFS' COUNSEL: I don't believe we do. I think he denied with permission for us to re-raise any issues if there was a problem.
 

 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364 at 20-21 (E.D. Va. Oct. 16, 2017), ECF No. 127 (transcript of September 22 hearing). The court "strongly suggest[ed]" that the plaintiffs' lawyers "start pursuing your discovery about that [USPS] IP address."
 
 Id
 
 . at 21. The court then entered an order dismissing Counts 7 and 8 of the Consolidated Complaint with prejudice, but held the remainder of the dismissal motion in abeyance. Notably, the order observed that, although the United States had previously been named as a defendant, "it was not named as a defendant in the Consolidated Complaint."
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364 at 1 (E.D. Va. Sept. 22, 2017), ECF No. 122. The plaintiffs did not seek reconsideration of that order.
 

 c.
 

 Meanwhile, the parties filed a joint discovery plan (for which they had jointly obtained a brief extension), which the magistrate judge approved on September 25, 2017. That plan retained the final discovery deadline of January 12, 2018. On September 27, 2017, the plaintiffs noticed their first deposition in the Eastern District of Virginia - six months after the litigation was transferred there. That notice again sought to depose a USPS representative and requested various records from that agency. The topics specified in the notice were similar to those identified in the plaintiffs' previous discovery motion, litigated in August 2017. It retained a request for "any and all records, logs, or other form of identification material" that "will or may assist in identifying" any person who had access to the listed IP addresses.
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364 at 3 (E.D. Va. Sept. 27, 2017), ECF No. 125. According to the briefs, the plaintiffs deposed a USPS representative in mid-October 2017.
 

 On October 27, 2017, Holder and Donahoe - the two remaining named defendants - moved to stay discovery until the district court resolved the balance of their motion to dismiss the Consolidated Complaint. Holder and Donahoe emphasized that, if they prevailed on qualified immunity, they were entitled to immunity from suit, including discovery. They also represented to the court that the plaintiffs had recently served wide-ranging document subpoenas on nine federal agencies and departments, including the FBI, the ATF, the Central Intelligence Agency (the "CIA"), and the NSA. The defendants submitted as support the plaintiffs' subpoena to the NSA, which included, inter alia, a request for all records relating to "Sharyl Attkisson's and/or CBS reporting on Benghazi" between 2004 and 2017.
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364 at 12 (E.D. Va. Oct. 27, 2017), ECF No. 130-1. As an alternative to their motion to stay discovery, the defendants sought a protective order.
 

 d.
 

 Shortly thereafter, on November 1, 2017, the district court dismissed with prejudice Counts 1 through 6 of the Consolidated Complaint as to Holder and Donahoe.
 
 See
 

 Attkisson v. Holder
 
 , 1:17-cv-00364,
 
 2017 WL 5013230
 
 (E.D. Va. Nov. 1, 2017), ECF No. 133 (the "First Dismissal"). The court also dismissed with prejudice Count 4 of the Consolidated Complaint as to all parties. With the filing of the First Dismissal, the only pending aspects of the litigation were Counts 1, 2, 3, 5, and 6, as to the John Doe agents. In the circumstances, the First Dismissal also denied as moot Holder and Donahoe's motion to stay discovery.
 

 On the very day the district court filed the First Dismissal, the plaintiffs moved to again name the United States as a defendant, asserting that they had inadvertently omitted to name the United States in the Consolidated Complaint. The court denied that motion two weeks later, on November 16, 2017, ruling that the plaintiffs had failed to show good cause and that "[a]llowing plaintiffs to add a defendant back into the litigation at this stage would lead to a regression of the litigation and impair judicial economy."
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364, at 4 (E.D. Va. Nov. 16, 2017), ECF No. 140. The court emphasized that the plaintiffs had not sought relief when the court's September 22, 2017 order referenced the omission of the United States as a defendant. The court observed, however, that the plaintiffs were entitled
 to pursue their remaining claims against the John Doe agents.
 
 [3]
 

 Accordingly, the plaintiffs continued to pursue discovery, including seeking information from non-party Verizon entities. On December 1, 2017, the magistrate judge granted the plaintiffs' request to vacate the existing scheduling order and authorized the plaintiffs to "substitute new parties for the John Doe defendants by no later than January 5, 2018, at 10:00 a.m."
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364, at 1 (E.D. Va. Dec. 1, 2017), ECF No. 145. The judge explained: "Once the substituted parties have been served and make an appearance in this case, a new scheduling order will be entered."
 
 Id
 
 .
 

 Two weeks later, the plaintiffs sought to extend the substitution deadline. That motion was granted and the deadline for naming the John Doe agents was extended to February 5, 2018. In its order, the district court emphasized that the John Doe agents were "the only defendants remaining in this civil action," and explicitly advised that this order constituted the plaintiffs' final extension "because the interests of judicial economy and fairness to third parties and potential future defendants dictate that plaintiffs move forward with this litigation in as timely a fashion as possible."
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364, at 1-2 (E.D. Va. Dec. 29, 2017), ECF No. 151.
 

 e.
 

 On January 5, 2018, Verizon Virginia LLC ("Verizon") sought a protective order against the plaintiffs' pending discovery requests. Verizon represented to the court that the plaintiffs had first sought third-party discovery from Verizon on October 16, 2017, requesting records related to purported surveillance of the Attkissons. Verizon had responded that it possessed no documents responsive to that request. During the next two months, the plaintiffs served five additional discovery requests on Verizon, some of which did not match the notices the plaintiffs filed with the court, and most of which were broader in scope than the October 16 request. For example, a discovery request of December 7, 2017, sought to depose a Verizon representative regarding "Verizon's cyber security operations between 2010 and 2014," including "the relationship between Verizon and the U.S. Intelligence Community."
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364 at 2 (E.D. Va. Dec. 7, 2017), ECF No. 147.
 

 On the very day that Verizon sought the protective order - January 5, 2018 - the plaintiffs filed a motion to compel discovery from the various third-party government entities they had served with document subpoenas, including the FBI, the CIA, and the NSA. Importantly, the January 5 motion to compel was the first - and only - effort to compel discovery that the plaintiffs pursued in the Eastern District of Virginia.
 
 [4]
 

 A week later, on January 12, 2018, the magistrate judge conducted a hearing on Verizon's protective order request and the plaintiffs' motion to compel. The judge first addressed Verizon's motion, which it
 granted in part and denied in part, addressing each disputed request individually. As part of the approved requests, the judge authorized the deposition of Todd Haskell, the Verizon technician who made a service call to the Attkissons' home on January 1, 2013.
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364 at 6, 17 (E.D. Va. Jan. 24, 2018), ECF No. 173 (transcript of January 12 hearing). The judge also approved a deposition of a Verizon corporate representative, either Haskell or some other designated employee.
 

 Turning to the plaintiffs' motion to compel, the magistrate judge expressed skepticism concerning the plaintiffs' need for documents dating back to 2004, and criticized the requested discovery as overly broad. The judge emphasized to the lawyers that they should focus on "identification discovery" rather than "liability discovery," and advised that "a new scheduling order" would be issued if "Doe defendants" were successfully named.
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364 at 24 (E.D. Va. Jan. 24, 2018), ECF No. 173. The judge explained that, with the Does being the only remaining defendants, identification discovery had to come first, because "the party involved in the lawsuit ... needs to be involved in that discovery."
 
 Id
 
 . at 25. The plaintiffs answered that they had "tried to focus [their] discovery" on "attribution."
 
 Id
 
 . In response, the judge advised that their requests did not reflect such a focus and, in fact, were so "generic" and of such "astounding" scope that it was difficult to rule on them.
 
 Id
 
 . at 26-27.
 

 Nevertheless, the magistrate judge instructed the parties to proceed with discovery for the purpose of "identify[ing] the Doe defendants."
 
 Id
 
 . at 35. No discovery outside the identification purpose was permitted. That said, the judge required "more specific information" before he could grant a motion to compel.
 
 Id
 
 . at 36. The judge thus denied the motion to compel without prejudice. As the hearing concluded, the judge instructed the plaintiffs' lawyers "to focus on this and get it done as quickly as possible" to "hopefully meet the February 5 deadline" for naming the John Doe defendants.
 
 Id
 
 . at 37.
 

 f.
 

 Despite those warnings, the plaintiffs made no motions or requests of the district court between the January 12, 2018 hearing and the February 5, 2018 deadline for naming the John Doe defendants. That is, for twenty-three days the plaintiffs neither sought the court's aid with discovery nor requested an extension of the deadline. And the plaintiffs' lawyers later admitted to the court that they had not submitted any revised discovery requests to the government agencies until January 28, 2018 - just one week before the deadline.
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364 at 2 (E.D. Va. Feb. 13, 2018), ECF No. 176. Verizon has since represented to this Court that the plaintiffs did not take the depositions of the two Verizon employees that the magistrate judge authorized at the January 12 hearing.
 
 See
 
 Br. of Verizon Defendants-Appellees 3.
 
 [5]
 

 Instead, on February 5, 2018, the plaintiffs purported to file their Amended Complaint. The plaintiffs were only authorized to amend their complaint by substitution of
 named parties for the John Doe defendants, as ordered by the district court. Nevertheless, the Amended Complaint failed to substitute any named parties for the John Doe agents. It again identified as defendants the United States and unknown named agents of the DOJ, the USPS, and the United States. The Amended Complaint also added as new defendants the FBI and the Verizon defendants. Additionally, it realleged Counts 4, 7, and 8, which the court had already dismissed with prejudice. The named defendants - that is, the United States, the FBI, and the Verizon defendants - promptly moved in March 2018 to dismiss the Amended Complaint.
 

 On May 15, 2018, the district court granted the motions of the named defendants to dismiss the Amended Complaint and disposed of the plaintiffs' claims.
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364 (E.D. Va. May 15, 2018), ECF No. 213 (the "Second Dismissal"). The Second Dismissal ruled that the plaintiffs had violated several of the court's earlier orders with regard to amending the complaint. By way of example, the Amended Complaint added defendants who were not appropriate substitutes for the John Doe agents and simply ignored the court's prior order denying leave to name the United States as a defendant.
 

 Although the plaintiffs' procedural violations sufficed to dismiss the Amended Complaint, the court provided additional explanations for its rulings. First, the court dismissed the resurrected claims against the United States because it had already denied leave to rename the United States as a defendant. Next, the court dismissed the claims against the FBI because no such lawsuit was authorized by any of the statutory provisions under which the plaintiffs sought to sue the Bureau.
 
 See
 
 Second Dismissal 5 (citing
 
 Blackmar v. Guerre
 
 ,
 
 342 U.S. 512
 
 ,
 
 72 S.Ct. 410
 
 ,
 
 96 L.Ed. 534
 
 (1952) ). The court dismissed the claims against the Verizon defendants as procedurally barred and for failure to state a plausible claim to relief. Finally, the court dismissed the claims against the John Doe agents because, after more than three years of litigation, those unnamed agents had never been identified or served, and the plaintiffs had "made no substantial progress" in that regard.
 
 Id
 
 . at 6 n.3.
 

 Because of the plaintiffs' multitude of procedural violations, and because the district court decided that further amendments "would be futile," the court declined to authorize the plaintiffs to again amend their complaint.
 
 See
 
 Second Dismissal 5-6. Accordingly, the court entered final judgment in favor of the defendants.
 

 The plaintiffs have timely noted this appeal. They challenge only the dismissal of their Fourth Amendment
 
 Bivens
 
 claim with respect to Holder and Donahoe, the dismissal of their ECPA claim with respect to those defendants, and the district court's dismissal of the Amended Complaint - including the claims against the John Doe agents and the Verizon defendants - with its concomitant denial of leave to further amend their complaint. We possess appellate jurisdiction pursuant to
 
 28 U.S.C. § 1291
 
 .
 

 II.
 

 This Court reviews de novo a dismissal under Federal Rule of Civil Procedure 12(b)(6).
 
 See
 

 Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.
 
 ,
 
 591 F.3d 250
 
 , 253 (4th Cir. 2009). In so doing, we accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiffs.
 
 Id
 
 . That said, we "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments."
 

 Wag More Dogs, LLC v. Cozart
 
 ,
 
 680 F.3d 359
 
 , 365 (4th Cir. 2012) (internal quotation marks omitted). Viewing the complaint in that light, it must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' "
 
 Ashcroft v. Iqbal
 
 ,
 
 556 U.S. 662
 
 , 678,
 
 129 S.Ct. 1937
 
 ,
 
 173 L.Ed.2d 868
 
 (2009) (quoting
 
 Bell Atl. Corp. v. Twombly
 
 ,
 
 550 U.S. 544
 
 , 570,
 
 127 S.Ct. 1955
 
 ,
 
 167 L.Ed.2d 929
 
 (2007) ).
 

 By contrast, we review the dismissal of a complaint for violation of court orders for abuse of discretion.
 
 See
 

 Simpson v. Welch
 
 ,
 
 900 F.2d 33
 
 , 35-36 (4th Cir. 1990). We likewise review for abuse of discretion a district court's denial of leave to amend a complaint,
 
 see
 

 Scott v. Family Dollar Stores, Inc.
 
 ,
 
 733 F.3d 105
 
 , 112 (4th Cir. 2013), and the dismissal of a defendant for lack of service,
 
 see
 

 Shao v. Link Cargo (Taiwan) Ltd.
 
 ,
 
 986 F.2d 700
 
 , 708 (4th Cir. 1993).
 

 III.
 

 The plaintiffs present three challenges to the district court's rulings. First, they contend that the court erred in dismissing their Fourth Amendment
 
 Bivens
 
 claim against Attorney General Holder and Postmaster Donahoe as a matter of law. Second, they dispute the court's dismissal of their ECPA claim against Holder and Donahoe. Third, the plaintiffs contest the court's dismissal of the John Doe agents and Verizon defendants on procedural grounds, along with its simultaneous denial of leave to further amend their complaint. We address these contentions in turn.
 

 A.
 

 The plaintiffs first contest the district court's dismissal of their Fourth Amendment
 
 Bivens
 
 claim against Attorney General Holder and Postmaster Donahoe for failure to present a cognizable claim under the Supreme Court's controlling precedent. In the Consolidated Complaint, the plaintiffs allege that Holder, Donahoe, and the John Doe agents violated their Fourth Amendment rights by unlawfully surveilling the plaintiffs through their electronic devices. They seek damages for that alleged injury pursuant to the Court's ruling in
 
 Bivens v. Six Unknown Federal Narcotics Agents
 
 , which authorized damages for certain constitutional violations by federal officials.
 
 See
 

 403 U.S. 388
 
 , 395,
 
 91 S.Ct. 1999
 
 ,
 
 29 L.Ed.2d 619
 
 (1971). In its First Dismissal, the district court rejected that claim as to Holder and Donahoe because, under more recent precedent, the plaintiffs failed to state a viable
 
 Bivens
 
 claim against those named defendants. We agree.
 

 The Supreme Court's 2017 decision in
 
 Ziglar v. Abbasi
 
 narrowed the circumstances in which a plaintiff may successfully state a claim under the principles established in
 
 Bivens
 
 .
 
 See
 
 --- U.S. ----,
 
 137 S. Ct. 1843
 
 , 1857-58,
 
 198 L.Ed.2d 290
 
 (2017). As the Court explained in
 
 Abbasi
 
 , the
 
 Bivens
 
 decision created an implied cause of action, permitting civil suits for damages for constitutional violations by federal officials where Congress had not indicated that such a remedy was foreclosed.
 
 Id
 
 . at 1854.
 
 Bivens
 
 itself authorized damages in a situation involving an unlawful search and arrest in the plaintiff's home.
 
 See
 

 403 U.S. at 389
 
 ,
 
 91 S.Ct. 1999
 
 . In the years since
 
 Bivens
 
 , the Court has recognized implied causes of action in two additional situations: for the violation of a prisoner's Eighth Amendment right to adequate medical care, and for a federal employee's Fifth Amendment due process right against gender discrimination.
 
 See
 

 Abbasi
 
 ,
 
 137 S.Ct. at
 
 1854-55 (citing
 
 Carlson v. Green
 
 ,
 
 446 U.S. 14
 
 ,
 
 100 S.Ct. 1468
 
 ,
 
 64 L.Ed.2d 15
 
 (1980) ;
 

 Davis v. Passman
 
 ,
 
 442 U.S. 228
 
 ,
 
 99 S.Ct. 2264
 
 ,
 
 60 L.Ed.2d 846
 
 (1979) ).
 
 [6]
 
 In
 
 Abbasi
 
 , the Court clarified the inquiry as to whether a cognizable
 
 Bivens
 
 remedy exists with regard to a specific type of alleged official misconduct. First, a court must determine whether the claim "presents a new
 
 Bivens
 
 context."
 
 Id
 
 . at 1859. If it does, the court must assess whether any "special factors counsel[ ] hesitation" in recognizing a new remedy "in the absence of affirmative action by Congress."
 
 Id
 
 . at 1857.
 

 A
 
 Bivens
 
 claim arises in a "new context" if the case differs "in a meaningful way from previous
 
 Bivens
 
 cases decided by" the Supreme Court.
 
 See
 

 Abbasi
 
 ,
 
 137 S.Ct. at 1859
 
 . Examples of such meaningful differences include:
 

 the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the function of other branches; or the presence of potential special factors that previous
 
 Bivens
 
 cases did not consider.
 

 Id
 
 . at 1860. Although
 
 Bivens
 
 itself approved a remedy for an alleged Fourth Amendment violation, we agree with the district court that the claim asserted by the plaintiffs here presents a "new
 
 Bivens
 
 context."
 

 The plaintiffs' Fourth Amendment
 
 Bivens
 
 claim against Holder and Donahoe differs meaningfully from the claim raised in
 
 Bivens
 
 in numerous ways that are material under
 
 Abbasi
 
 . First, Holder and Donahoe held much higher ranks than the line-level FBI agents sued in
 
 Bivens
 
 . Second, a claim based on unlawful electronic surveillance presents wildly different facts and a vastly different statutory framework from a warrantless search and arrest. Finally, the plaintiffs seek to hold high-level officials accountable for what they themselves frame as policy-level decisions to target internal leaks to the media. In these circumstances, the plaintiffs' claim against Holder and Donahoe assuredly presents a "new
 
 Bivens
 
 context."
 

 Moreover, the plaintiffs' Fourth Amendment
 
 Bivens
 
 claim fails at the second step described in
 
 Abbasi
 
 . Various "special factors" identified in the
 
 Abbasi
 
 decision counsel hesitation against recognizing a
 
 Bivens
 
 claim here.
 
 See
 

 137 S.Ct. at 1857
 
 . It is sufficient, however, to note that Congress has legislated extensively in the area of electronic surveillance and intrusions into electronic devices without authorizing damages for a Fourth Amendment violation in such circumstances. Indeed, Congress has created several private causes of actions under various statutes governing the surveillance and the integrity of personal computing devices, including the SCA, FISA, and the CFAA. That legislation suggests that Congress's "failure to provide a damages remedy" for Fourth Amendment violations in similar factual circumstances is "more than inadvertent," and strongly counsels hesitation before creating such a remedy ourselves.
 
 See
 

 Abbasi
 
 ,
 
 137 S.Ct. at 1862
 
 . Indeed, "if there is
 an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new
 
 Bivens
 
 cause of action."
 
 Id
 
 . at 1858 ;
 
 see also
 

 Schweiker v. Chilicky
 
 ,
 
 487 U.S. 412
 
 , 423,
 
 108 S.Ct. 2460
 
 ,
 
 101 L.Ed.2d 370
 
 (1988) (same).
 

 In these circumstances, we discern "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong," and we are therefore obliged to "refrain from creating the remedy."
 
 See
 

 Abbasi
 
 ,
 
 137 S.Ct. at 1858
 
 . Accordingly, we are satisfied to affirm the district court's dismissal of the plaintiffs' Fourth Amendment
 
 Bivens
 
 claim with respect to Holder and Donahoe.
 

 B.
 

 By way of their second appellate contention, the plaintiffs maintain that the district court erred in rejecting their ECPA claim as part of the First Dismissal. The plaintiffs assert that Holder and Donahoe violated the ECPA's prohibition on the unauthorized interception and disclosure of wire, oral, or electronic communications, codified at
 
 18 U.S.C. § 2511
 
 . Section 2511 provides that
 

 any person who - (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication; (b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when [certain undisputed elements are met]; (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection [has violated the ECPA, unless authorized by law as detailed elsewhere in the statute].
 

 Specifically, the Consolidated Complaint alleges that Holder and Donahoe procured government agents to intercept the plaintiffs' electronic communications. The plaintiffs pursued that claim under the ECPA's private right of action, which provides that
 

 any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in a violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.
 

 See
 

 18 U.S.C. § 2520
 
 . Comparing § 2511 and § 2520, the district court determined that the cause of action authorized by § 2520 does not extend to persons who
 
 procured
 
 another to intercept, disclose, or intentionally use a covered communication. Rather, the court concluded that a suit under § 2520 may only target an individual who
 
 directly
 
 intercepted, disclosed, or used such a communication in violation of § 2511.
 

 On appeal, the plaintiffs challenge the district court's interpretation and argue that § 2520 is better read to permit civil suits with regard to any violation of § 2511. We decline to address that interpretive issue, however, because we agree with the Government that, even if § 2520 supports a civil ECPA claim for procurement, Holder and Donahoe are entitled to qualified immunity.
 
 [7]
 

 Qualified immunity protects government officials from civil liability and suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."
 
 See
 

 Harlow v. Fitzgerald
 
 ,
 
 457 U.S. 800
 
 , 818,
 
 102 S.Ct. 2727
 
 ,
 
 73 L.Ed.2d 396
 
 (1982). To overcome an official's claim of qualified immunity, the plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."
 
 See
 

 Ashcroft v. al-Kidd
 
 ,
 
 563 U.S. 731
 
 , 735,
 
 131 S.Ct. 2074
 
 ,
 
 179 L.Ed.2d 1149
 
 (2011) (internal quotation marks omitted). A court need not address those inquiries in sequence, but instead may exercise its "sound discretion" in deciding which issue to first address.
 
 See
 

 Pearson v. Callahan
 
 ,
 
 555 U.S. 223
 
 , 236,
 
 129 S.Ct. 808
 
 ,
 
 172 L.Ed.2d 565
 
 (2009). The official is entitled to qualified immunity if either prong is not satisfied.
 
 Id
 
 . at 244-45,
 
 129 S.Ct. 808
 
 .
 

 Assessing the plaintiffs' ECPA claim, we conclude that, to the extent Holder and Donahoe procured any wrongful interception, use, or disclosure of the plaintiffs' electronic communications, they did not violate a clearly established right. To show a clearly established right, a plaintiff must identify existing precedent that "placed the statutory or constitutional question beyond debate."
 
 See
 

 al-Kidd
 
 ,
 
 563 U.S. at 741
 
 ,
 
 131 S.Ct. 2074
 
 . This the plaintiffs have failed to do.
 
 Compare
 

 Peavy v. WFAA-TV, Inc.
 
 ,
 
 221 F.3d 158
 
 , 169 (5th Cir. 2000) (ruling that § 2520 only authorizes suits based on "illegal interception, disclosure, or use, and
 
 not
 
 to procuring interception by another"),
 
 with
 

 Lonegan v. Hasty
 
 ,
 
 436 F.Supp.2d 419
 
 , 427-28 (E.D.N.Y. 2006) (concluding that § 2520 permits suits based on procurement).
 

 Whatever our view of the procurement issue, the lack of settled precedent supporting the plaintiffs' ECPA claim demonstrates that Holder and Donahoe are now entitled to qualified immunity.
 
 See
 

 Abbasi
 
 ,
 
 137 S.Ct. at 1868
 
 ("When the courts are divided on an issue so central to the cause of action alleged, a reasonable official lacks the notice required before imposing liability."). Consequently, we affirm the district court's dismissal of the ECPA claim with regard to Holder and Donahoe.
 
 [8]
 

 C.
 

 The plaintiffs' third and final appellate contention challenges the district court's Second Dismissal. More specifically, the plaintiffs object to the dismissal of their claims against the Verizon defendants and the John Doe agents - which they argue should survive the dismissal of their claims
 against Holder and Donahoe - as well as the court's denial of leave to further amend their complaint.
 

 The district court dismissed the remaining defendants and denied the plaintiffs leave to further amend their complaint based on similar reasoning. Put simply, the court was dissatisfied with the plaintiffs' lack of progress in pursuing their claims after more than three years of litigation, and their lack of respect for court orders. The court observed that the plaintiffs had failed to identify or serve any of the John Doe agents, even after receiving multiple extensions to the court's deadline. Indeed, the plaintiffs had made little or no progress in that regard, despite filing five complaints (not counting two complaints that were replaced with corrected versions).
 

 Moreover, the Amended Complaint contravened the court's prior orders and the Federal Rules of Civil Procedure in multiple ways:
 

 • The Amended Complaint failed to comply with the court's order to substitute named parties for the John Doe agents and instead retained the Doe defendants while adding new defendants;
 

 • The plaintiffs had leave of court to amend their complaint solely to name the John Doe agents and violated that leave by adding new defendants;
 

 • The plaintiffs never sought additional leave to amend their complaint nor challenged the leave they were granted;
 

 • The new defendants included the United States, despite the court's prior order denying leave to rename the United States as a defendant; and
 

 • The Amended Complaint attempted to resurrect several claims that the court had already dismissed with prejudice.
 

 In discussing those procedural defects, the court emphasized its warnings to the plaintiffs that the February 5, 2018 deadline was necessary to avoid prejudicing the defendants (or potential future defendants), and to protect the interests of judicial economy. Those concerns, as the court explained, also motivated the Second Dismissal.
 

 The court concluded that further amendment to the complaint would, in any event, be futile, because the claims against the FBI had no statutory basis and the claims against the Verizon defendants failed to state any plausible claim to relief. With regard to the John Doe agents, the court ruled that, given the lack of "substantial progress in identifying them," the time had come "to end this litigation against them as well, and for this reason, the claims against them are also dismissed."
 
 See
 
 Second Dismissal 6 n.3.
 

 On appeal, the plaintiffs contest only the dismissal of the Verizon defendants and the John Doe agents, as well as the district court's denial of leave to further amend their complaint. Despite its detailed discussion in the Second Dismissal of the procedural defects of the Amended Complaint, the court did not specify the rules of procedure that provided the bases for its rulings. Nevertheless, we are entitled to affirm "on any grounds supported by the record."
 
 See
 

 Kerr v. Marshall Univ. Bd. of Governors
 
 ,
 
 824 F.3d 62
 
 , 75 n.13 (4th Cir. 2016). And we are entirely satisfied that the Amended Complaint was properly subject to dismissal pursuant to Rule 41(b). With respect to the John Does, the claims against those unknown defendants were subject to dismissal under Rule 4(m), which requires the dismissal of a defendant who remains unserved ninety days after a complaint is filed, absent good
 cause. Accordingly, the court did not abuse its discretion in dismissing the Amended Complaint and denying the plaintiffs leave to further amend their complaint. We will expand on those rulings.
 

 1.
 

 As the Supreme Court has recognized, a court has the "inherent power" to dismiss an action for want of prosecution.
 
 See
 

 Link v. Wabash R. Co.
 
 ,
 
 370 U.S. 626
 
 , 630,
 
 82 S.Ct. 1386
 
 ,
 
 8 L.Ed.2d 734
 
 (1962). Although Rule 41(b) of the Federal Rules of Civil Procedure provides an "explicit basis for this sanction," it is not the source of that inherent power.
 
 See
 

 Doyle v. Murray
 
 ,
 
 938 F.2d 33
 
 , 34 (4th Cir. 1991). Rather, that judicial power derives from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."
 
 See
 

 Link
 
 ,
 
 370 U.S. at 630-31
 
 ,
 
 82 S.Ct. 1386
 
 . As provided by Rule 41(b), such involuntary dismissals are appropriate when "the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." Given the inherent judicial authority to make such dismissals, a court may, in appropriate circumstances, enter such a dismissal sua sponte, even absent advance notice of "the possibility of dismissal."
 
 See
 

 Link
 
 ,
 
 370 U.S. at 632-33
 
 ,
 
 82 S.Ct. 1386
 
 .
 

 That said, recognizing the severity of dismissal as a sanction, we have identified four criteria that guide a district court's discretion in dismissing a case under Rule 41(b). Such an exercise should weigh: "(1) the plaintiff's degree of personal responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal."
 
 See
 

 Hillig v. C.I.R.
 
 ,
 
 916 F.2d 171
 
 , 174 (4th Cir. 1990). Those criteria, however, "are not a rigid four-prong test."
 
 See
 

 Ballard v. Carlson
 
 ,
 
 882 F.2d 93
 
 , 95 (4th Cir. 1989) (Powell, J.). Rather, the propriety of an involuntary dismissal ultimately depends on "the facts of each case," which we review to determine "whether the trial court exercised sound discretion."
 
 See
 

 Reizakis v. Loy
 
 ,
 
 490 F.2d 1132
 
 , 1135 (4th Cir. 1974) ;
 
 see also
 

 Link
 
 ,
 
 370 U.S. at 633
 
 ,
 
 82 S.Ct. 1386
 
 .
 
 [9]
 

 In the circumstances of these proceedings, we are satisfied that the district court did not abuse its discretion in dismissing the Amended Complaint. This Court has previously upheld an involuntary dismissal under Rule 41(b) where the plaintiff "failed to respond to a specific directive from the [trial] court."
 
 See
 

 Ballard
 
 ,
 
 882 F.2d at 95
 
 . Our reasoning in
 
 Ballard
 
 applies directly to the Amended Complaint's multiple violations of the Federal Rules and the applicable court orders. To start, the plaintiffs amended their complaint
 beyond the leave authorized, in violation of Rule 15(a)(2) and the court's order of December 29, 2017.
 
 [10]
 
 Nor did the plaintiffs even attempt to show good cause for those additional amendments, which Rule 16(b) requires after the entry of a scheduling order.
 
 See
 

 Nourison Rug Corp. v. Parvizian
 
 ,
 
 535 F.3d 295
 
 , 298 (4th Cir. 2008) (ruling that "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings").
 
 [11]
 
 The plaintiffs failed to substitute named parties for the John Doe agents and retained the John Doe defendants in the Amended Complaint, in violation of the court's December 29, 2017 order. The plaintiffs also renamed the United States as a defendant, in direct violation of the court's order of November 16, 2017. Lastly, the Amended Complaint improperly sought to resurrect Counts 4, 7, and 8 of the Consolidated Complaint, which the court had dismissed with prejudice months earlier.
 

 Providing further context for the Second Dismissal, the district court and the magistrate judge had both repeatedly warned the plaintiffs to focus on identifying the John Doe agents prior to the February 5, 2018 deadline.
 
 See
 

 Ballard
 
 ,
 
 882 F.2d at 95
 
 (considering warning issued by magistrate judge in assessing 41(b) dismissal). Contrary to the view of our dissenting colleague, the record simply fails to show that the plaintiffs acted "diligently" in pursuing that discovery.
 
 See post
 
 at 43. Rather, they filed a single motion to compel, which the magistrate judge promptly ruled on. And the magistrate judge then authorized depositions of Verizon employees which the plaintiffs never took. Prior to that motion to compel, there were significant periods of inactivity by the plaintiffs, compounded by (unopposed) extensions sought by the defendants.
 
 See
 

 Davis v. Williams
 
 ,
 
 588 F.2d 69
 
 , 70-71 (4th Cir. 1978) (sustaining 41(b) dismissal where two-year litigation reflected "long history of delay" and plaintiff's counsel "refused to take the initiative").
 

 This is not a situation where a plaintiff's lawyer has briefly failed to comply with a court's order without any participation of or blame on his client.
 
 Cf.
 

 Hillig
 
 ,
 
 916 F.2d at 174
 
 (reversing 41(b) dismissal in part because counsel's noncompliance spanned only three months, resulted from miscommunication, and was not known to client);
 
 Reizakis
 
 ,
 
 490 F.2d at 1134-35
 
 (reversing 41(b) dismissal because lack of trial preparation resulted from miscommunication between retained counsel and local counsel despite plaintiff's steps in anticipation of trial). Nor does this litigation involve a pro se or incarcerated inmate who had limited opportunities to "follow the progress of his case."
 
 Cf.
 

 Doyle
 
 ,
 
 938 F.2d at 35
 
 . Courts should - and regularly do - take such realities into account. These plaintiffs were well represented and free to fully prosecute their case.
 

 In sum, the plaintiffs contravened multiple rules and court orders while failing to alert the district court to any problems justifying their actions. And they acted in the face of explicit instructions from the
 court and the magistrate judge. Those circumstances support the dismissal with prejudice of their claims under Rule 41(b).
 
 See
 

 Ballard
 
 ,
 
 882 F.2d at
 
 94-95 ;
 
 acc.
 

 Thomas v. Arn
 
 ,
 
 474 U.S. 140
 
 , 147,
 
 106 S.Ct. 466
 
 ,
 
 88 L.Ed.2d 435
 
 (1985) (observing that if petitioner "failed to comply with a scheduling order" court "could certainly dismiss the appeal").
 
 [12]
 
 On this record, we cannot rule that the court abused its discretion in dismissing the Amended Complaint.
 

 2.
 

 The foregoing analysis applies equally to the plaintiffs' claims against the John Doe agents and suffices to affirm the district court's dismissal thereof. That said, the dismissal of the Doe defendants is also supported by Rule 4(m) of the Federal Rules of Civil Procedure.
 
 [13]
 
 Rule 4(m) requires the dismissal of defendants who remain unserved ninety days after the filing of a complaint unless "the plaintiff shows good cause." The plaintiffs failed to show good cause in the district court, nor do we discern any on this record. As with other procedural dismissals, we review a dismissal under Rule 4(m) for abuse of discretion.
 
 See
 

 Shao v. Link Cargo (Taiwan) Ltd.
 
 ,
 
 986 F.2d 700
 
 , 708 (4th Cir. 1993) (reviewing Rule 4(m) 's predecessor - Rule 4(j) - for abuse of discretion).
 

 Generally, for purposes of Rule 4(m), "good cause" requires some showing of diligence on the part of the plaintiffs. Put conversely, good cause generally exists when the failure of service is due to external factors, such as the defendant's intentional evasion of service.
 
 See
 

 Mann v. Castiel
 
 ,
 
 681 F.3d 368
 
 , 374 (D.C. Cir. 2012) (collecting cases and commentary). While "good cause" is a flexible standard, diligence provides a touchstone for an appellate court that is reviewing a dismissal under Rule 4(m).
 
 See, e.g.
 
 ,
 
 Cardenas v. City of Chicago
 
 ,
 
 646 F.3d 1001
 
 , 1007 (7th Cir. 2011) (emphasizing that "the district court retained its discretion to hold the Plaintiffs accountable" for their "inaction" by "dismissing the case");
 
 McCurdy v. Am. Bd. of Plastic Surgery
 
 ,
 
 157 F.3d 191
 
 , 196-97 (3d Cir. 1998) (affirming Rule 4(m) dismissal where plaintiff did not show diligence in timely serving defendants and failed to seek extension of time before deadline lapsed).
 

 Whatever the minimum requirement for good cause may be, the plaintiffs have failed to show it. The facts that support the dismissal of the Amended Complaint under Rule 41(b) also show the plaintiffs' lack of diligence for purposes of Rule 4(m). The plaintiffs' significant periods of inactivity during three full years of litigation, their persistence in unjustifiably broad discovery requests despite repeated admonishments of the district court and the magistrate judge, and their decisions not to present additional difficulties with discovery to the court, show a lack of diligence in pursuit of their claims.
 
 See
 

 Scott v. Hern
 
 ,
 
 216 F.3d 897
 
 , 912 (10th Cir. 2000) (affirming dismissal under Rule 4(m) where plaintiffs failed to pursue authorized discovery against unnamed defendants);
 
 Figueroa v. Rivera
 
 ,
 
 147 F.3d 77
 
 , 82-83 (1st Cir. 1998) (affirming Rule 4(m) dismissal of John Doe defendants after seventeen months during which plaintiffs made no effort to identify them);
 
 Shao
 
 ,
 
 986 F.2d at 708
 
 (affirming dismissal under Rule 4(m) 's predecessor
 where, after two extensions to service deadline, plaintiff showed no progress).
 

 Our good dissenting colleague overstates our precedent by contending that a court may dismiss a suit for failure to name a John Doe defendant "
 
 only
 
 'if it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court.' "
 
 See post
 
 at 56 (quoting
 
 Schiff v. Kennedy
 
 ,
 
 691 F.2d 196
 
 , 198 (4th Cir. 1982) ). Our decision in
 
 Schiff
 
 merely explained that "
 
 if
 
 it does not appear" that the unnamed party could be identified, then "the court
 
 could
 
 dismiss the action without prejudice."
 
 See
 

 691 F.2d at 198
 
 (emphasis added). In fact, the
 
 Schiff
 
 decision repeatedly emphasized that, as to John Doe defendants, the "district court is in a better position than we now are to ascertain what treatment should be given, and when."
 
 Id
 
 . Judge Widener's fine opinion for the
 
 Schiff
 
 panel thus deferred to the district court as to "whether the case against Doe should be now permitted to proceed or whether the case at this stage should be terminated."
 
 Id
 
 . We will adhere to that good example and defer to the wisdom of the district judge in dismissing the John Doe defendants.
 

 That said, pursuant to Rule 4(m), and consistent with this Court's prior treatment of Doe defendants, the dismissal of the John Doe agents must be without prejudice.
 
 See
 
 Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court ... must dismiss the action without prejudice against that defendant[.]");
 
 see also
 

 Schiff
 
 ,
 
 691 F.2d at 198
 
 ("Should the district court persist in its dismissal of Doe without further proceedings, the dismissal will be without prejudice."). That rule flows from the principle that a court generally lacks personal jurisdiction over unserved parties.
 
 See, e.g.
 
 ,
 
 Koehler v. Dodwell
 
 ,
 
 152 F.3d 304
 
 , 306 (4th Cir. 1998) ("Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant."). With that clarification, we are satisfied to affirm without prejudice the John Doe dismissals.
 

 IV.
 

 Pursuant to the foregoing, we affirm the dismissals of Holder and Donahoe with prejudice; we affirm the dismissal of the Amended Complaint and the parties named therein with prejudice; and we affirm the dismissal of the unnamed John Doe agents without prejudice.
 

 AFFIRMED
 

 Although Attkisson asserts that the ATF, FBI, and DOJ mobilized against her reporting, the specific facts underlying that claim amount to nothing more than the DOJ's denials in response to Attkisson's reporting; the DOJ's attempt to identify the sources of internal leaks; and the ATF's goal of "proactively push[ing] positive stories" to repair the agency's public image.
 
 See
 
 Consolidated Complaint ¶¶ 16-17 & n.2.
 

 The Consolidated Complaint also makes various speculative and conclusory assertions against Holder, such as stating, without any supporting factual allegation or indication of personal knowledge, that Holder "promulgated a policy that required or encouraged the violation of Plaintiffs' rights."
 
 See
 
 Consolidated Complaint ¶ 72(G). Like the district court, we disregard such bare speculation.
 
 See
 

 Bell Atl. Corp. v. Twombly
 
 ,
 
 550 U.S. 544
 
 , 555,
 
 127 S.Ct. 1955
 
 ,
 
 167 L.Ed.2d 929
 
 (2007) (emphasizing that allegations in complaint must "raise a right to relief above the speculative level").
 

 More than a month later, on December 26, 2017, the plaintiffs filed another complaint against the United States in the Eastern District of Virginia.
 
 See
 

 Attkisson v. United States
 
 , No. 1:17-cv-01474 (E.D. Va. Dec. 26, 2017). In April 2018, the district court dismissed that complaint for lack of service, pursuant to Federal Rule of Civil Procedure 4(m) (requiring dismissal of any defendant not served within ninety days after complaint is filed, absent good cause).
 

 The plaintiffs filed another motion to compel in February 2018, after their Amended Complaint was filed. They soon withdrew that motion to compel.
 

 In the proceedings below and on appeal, the plaintiffs have maintained that they were "permitted only to conduct a grand total of one deposition," which is false.
 
 See
 
 Br. of Appellants 48. It appears, however, that the plaintiffs never deposed a Verizon representative, despite receiving the magistrate judge's authorization.
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364 at 2 (E.D. Va. Apr. 23, 2018), ECF No. 207 (plaintiffs' representation that "there has been exactly one deposition in this case" of a USPS representative).
 

 The Supreme Court may have recognized a fourth
 
 Bivens
 
 context in
 
 Farmer v. Brennan
 
 , which sustained a prisoner's Eighth Amendment claim for damages against federal prison officials for failure to protect.
 
 See
 

 511 U.S. 825
 
 , 823-49,
 
 114 S.Ct. 1970
 
 ,
 
 128 L.Ed.2d 811
 
 (1994). Although the
 
 Abbasi
 
 Court did not include
 
 Farmer
 
 in its list of recognized
 
 Bivens
 
 contexts, the Third Circuit recently held that a prisoner's failure-to-protect claim did not present a new
 
 Bivens
 
 context in light of
 
 Farmer
 
 .
 
 See
 

 Bistrian v. Levi
 
 ,
 
 912 F.3d 79
 
 , 90-92 (3d Cir. 2018). Because the plaintiffs' claim here is entirely distinct from that raised in
 
 Farmer
 
 , we need not and do not decide whether such a claim would present a new
 
 Bivens
 
 context.
 

 The district court did not premise its dismissal ruling on qualified immunity, but Holder and Donahoe raised that defense below and we are entitled to affirm on any ground fairly presented in the record.
 
 See
 

 Attkisson v. Holder
 
 , No. 1:17-cv-00364, at 19 (E.D. Va. Aug. 9, 2017), ECF No. 100 (defendants invoking qualified immunity);
 
 see also
 

 United States v. Smith
 
 ,
 
 395 F.3d 516
 
 , 519 (4th Cir. 2005) (confirming that we may affirm "on any grounds apparent from the record").
 

 In their appellate brief, the plaintiffs suggested - apparently for the first time - that Holder and Donahoe "might" have directly intercepted, used, or disclosed the plaintiffs' electronic communications.
 
 See
 
 Br. of Appellants 33 n.6. The Consolidated Complaint, however, fails to support that idle speculation or reflect such a claim. And in their petition for rehearing of May 6, 2019, the plaintiffs have suggested - again for the first time - that qualified immunity does not attach if the
 
 unlawfulness
 
 of an alleged act is clear and the availability of a
 
 remedy
 
 is the only dispute.
 
 See
 
 Pet. for Reh'g 10-11. Although Holder and Donahoe squarely raised - in the district court and again in this Court - the qualified immunity defense we have adopted, the plaintiffs opted not to heretofore present their counterargument. They have thus forfeited any such contention.
 

 Contrary to the assertion of our dissenting friend, we have never ruled that a district court's failure to expressly analyze the four factors guiding involuntary dismissals is itself an abuse of discretion.
 
 See post
 
 at 67. Rather, we have consistently reviewed the full circumstances of each such dismissal.
 
 See
 

 Reizakis
 
 ,
 
 490 F.2d at 1135
 
 (evaluating "the circumstances of this case," including, inter alia, whether trial court had "consider[ed] measures less drastic than dismissal"). Our approach accords with the Supreme Court's decision in
 
 Link
 
 , which emphasized the context-dependent nature of such dismissals and affirmed the lower court's involuntary dismissal based on its implicit consideration of "all the circumstances" before it.
 
 See
 

 370 U.S. at 634-35
 
 ,
 
 82 S.Ct. 1386
 
 . In any event, we are entitled to affirm a judgment where "the outcome is not in doubt."
 
 See
 

 Garnett v.Remedi Seniorcare of Va., LLC
 
 ,
 
 892 F.3d 140
 
 , 142 (4th Cir.),
 
 cert. denied
 
 , --- U.S. ----,
 
 139 S.Ct. 605
 
 ,
 
 202 L.Ed.2d 430
 
 (2018) (citing
 
 Singleton v. Wulff
 
 ,
 
 428 U.S. 106
 
 , 120,
 
 96 S.Ct. 2868
 
 ,
 
 49 L.Ed.2d 826
 
 (1976) ).
 

 Indeed, because the plaintiffs failed to obtain leave for their various amendments, the Amended Complaint was also "without legal effect" and thus "rightly disallowed" by the district court.
 
 See
 

 Schmidt v. United States
 
 ,
 
 749 F.3d 1064
 
 , 1069 (D.C. Cir. 2014) ;
 
 acc.
 

 Angles v. Dollar Tree Stores
 
 ,
 
 494 F. App'x 326
 
 , 329 (4th Cir. 2012).
 

 The only argument pursued by the plaintiffs in the district court to defend their addition of the Verizon defendants in the Amended Complaint was that those entities were proper substitutes for the John Doe agents. That position was not supported by the plaintiffs' allegations and was justifiably rejected.
 

 The dismissal of the plaintiffs' claims is with prejudice except as to the John Doe agents, as explained further herein.
 

 We are satisfied that the district court implicitly relied on Rule 4(m) in dismissing the John Doe defendants. The Second Dismissal emphasized the plaintiffs' failure to identify or serve those defendants, and their lack of progress in that regard.