**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1710**

UNITED STATES EX REL. AAROW/IET LLC,

Plaintiff – Appellant,

v.

HARTFORD FIRE INSURANCE COMPANY,

Defendant – Appellee,

and

HARPER CONSTRUCTION COMPANY,

Intervenor/Defendant – Appellee.

-------------------------------

THE AMERICAN SUBCONTRACTORS ASSOCIATION; THE AMERICAN SUBCONTRACTORS ASSOCIATION OF METRO WASHINGTON,

Amici Supporting Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, District Judge.  (1:19-cv-00085-AJT-JFA)

Argued:  September 10, 2020                     Decided:  December 10, 2020

Before MOTZ, KING, and FLOYD, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

───────────

**ARGUED:** Eli Robbins, HARRISON LAW GROUP, Towson, Maryland, for Appellant. Michael S. McNamara, PILLSBURY WINTHROP SHAW PITTMAN, LLP, Washington, D.C., for Appellees. **ON BRIEF:** Adam C. Harrison, HARRISON LAW GROUP, Towson, Maryland, for Appellant. William A. DeVan, CONSTRUCTIONLEX, PLC, Alexandria, Virginia, for Appellee Hartford Fire Insurance Company. Clare Cavaliero Pincoski, PILLSBURY WINTHROP SHAW PITTMAN LLP, Washington, D.C., for Appellee Harper Construction Company, Inc. Eric B. Travers, KEGLER, BROWN, HILL & RITTER CO., LPA, Columbus, Ohio, for Amici The American Subcontractors Association and The American Subcontractors Association of Metro Washington.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this Eastern District of Virginia civil action, plaintiff Aarow/IET LLC brought a breach of contract claim against defendant Harper Construction Company and a Miller Act claim against defendant Hartford Fire Insurance Company. On Harper's motion seeking dismissal of the breach of contract claim against it, the district court dismissed the entire action, including the Miller Act claim against Hartford. *See Aarow/IET LLC v. Hartford Fire Ins. Co.*, No. 1:19-cv-00085 (E.D. Va. June 3, 2019), ECF No. 56 (the "Dismissal Order"). Aarow has appealed from the court's judgment and, as explained herein, we vacate and remand for further proceedings.

## I.

## A.

Aarow is a subcontractor that performed electrical work on the Basic School Student Officer Quarters at Marine Corps Base Quantico in Virginia (the "Project"), pursuant to a May 2014 agreement with Harper (the "Subcontract"). Harper was the general contractor for the Project under its prime contract with the United States government. Hartford is a commercial surety company that provided a payment bond to protect Aarow and other subcontractors supplying labor and materials to the Project (the "Payment Bond"), in accordance with the requirements of the Miller Act. *See* 40 U.S.C. § 3131(b)(2); *see also J.W. Bateson Co. v. United States ex rel. Bd. of Trs. of Nat'l Automatic Sprinkler Indus. Pension Fund*, 434 U.S. 586, 589 (1978) ("[T]he Miller Act was designed to provide an alternative remedy to the mechanics' liens ordinarily available on private construction

3

projects. Because a lien cannot attach to Government property, persons supplying labor or materials on a federal construction project were to be protected by a payment bond." (citations and internal quotation marks omitted)).

Under the Subcontract, Aarow agreed to perform building and site electrical work for Phases 5 and 6 of the Project for the "base contract amount" of $5,345,000. *See* J.A. 105.[1] Aarow also agreed to perform similar work for Phase 7 of the Project as "pre-priced option[s]" specified in the Subcontract. *Id.*

There are several provisions of the Subcontract relevant to these proceedings. Article 5 provides, in pertinent part:

> **Cooperation between Parties:** The Contractor shall cooperate with the Subcontractor for the prosecution of the work, and the Subcontractor shall cooperate with the Contractor and with other Subcontractors employed by the Contractor and with other Contractors employed by the Owner, in order to insure first class workmanship in every respect and the proper sequence of the work.

*See* J.A. 102. Article 6 pertains to the scheduling of the times for the start and finish of the work. Article 7 provides:

> **Extension of Time of Completion:** If the Subcontractor shall be obstructed or delayed in the prosecution or completion of the work by the neglect or default of the Contractor, . . . then the time, as fixed in Article 6 for the completion of the work, shall be extended for a period necessary to make up for lost time . . . .

*Id.*

---

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

Article 8 of the Subcontract, which is referred to in these proceedings as a "no-damages-for-delay" provision, states as follows:

**Delays:**

A.    In the event of any delays, entailed as a result of fault of Contractor . . . , then Contractor shall grant Subcontractor an extension of time equal to the delay and Subcontractor shall be entitled to no other or further damages against Contractor . . . .

B.    Any delays or additional work entailed as a result of weather conditions, storms, acts of God, delays in construction, and delays by governmental bodies will not entitle the Subcontractor to any extras whatsoever.

*See* J.A. 102. Finally, Article 26 provides:

**Claims by Either Party Against the Other:** If either the Subcontractor or Contractor believes he has a claim of any nature whatsoever against the other party, he shall give the other written notice of the amount, whenever possible, and nature of such claim within ninety (90) days . . . of the occurrence of the event upon which such claim is based. In default of such notice the claim is waived.

*Id.* at 103.

During its work on the Project, Aarow gave Harper at least one written notice of a claim — an April 2018 request for equitable adjustment seeking an additional $2,900,619 for work on Phases 5, 6, and 7 (the "REA"). The REA advises that it is "for actual costs related to additional time, labor, general conditions, overhead and bond costs for the completion of the electrical." *See* J.A. 111. Furthermore, the REA states that this "proposal does not include any cost amounts for extended contract durations, overtime, unforeseen conditions, changes in the sequence of work, acceleration, disruptions, and impacts, unless specifically noted otherwise." *Id.* at 110. The REA notes that Phases 5 and 6 of the Project

5

began on schedule on May 20, 2014, but did not end until September 3, 2016 — 174 workdays after the scheduled end date of December 29, 2015. Phase 7 started late (on October 1, 2016, instead of August 6, 2016); was projected to finish late (on May 16, 2018, instead of November 7, 2017); and was therefore going to take 124 more workdays than had been scheduled. The REA cites a "Total Overall Project Extension of 298 working days" and calculates various "Delay Cost[s]" based on 298 "Delay Days." *Id.* at 111, 113. The REA also twice asserts that 298 days was "not entire delay." *Id.* at 113.

B.

After Harper refused to pay Aarow the additional compensation sought by way of the REA, Aarow initiated this civil action in January 2019. Aarow's original Complaint named Hartford as the sole defendant and asserted only the Miller Act claim for recovery on the Payment Bond. *See Aarow/IET LLC v. Hartford Fire Ins. Co.*, No. 1:19-cv-00085 (E.D. Va. Jan. 23, 2019), ECF No. 1 (the "Complaint"). The Complaint alleged that "the Project suffered from numerous disruptions, all of which impacted Aarow's ability to prosecute its work on the Project in the timely, efficient, and sequential manner which it originally anticipated and planned when it compiled its price to perform its work on the Project." *Id.* ¶ 9. Notably, the Complaint did not expressly blame Harper for the alleged disruptions, and it sought the same amount of compensation — $2,900,619 — that had been demanded in the REA. The Complaint specified that "Aarow submitted [the REA] to Harper" in April 2018 and that "Harper refused to compensate Aarow for the additional labor it rendered to the Project." *Id.* ¶¶ 16-17. The Payment Bond, Subcontract, and REA were attached to the Complaint as exhibits.

In early March 2019, Hartford responded to the Complaint with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To support its dismissal motion, Hartford contended that its Miller Act liability on the Payment Bond as surety is derivative of its principal Harper's liability on the Subcontract. Hartford further asserted that, because the Complaint did not allege that Harper was responsible for the alleged disruptions to Aarow's work or that Harper breached the Subcontract, Aarow failed to plead facts indicating that Harper was liable on the Subcontract. Consequently, Hartford argued, Aarow failed to state a plausible Miller Act claim against Hartford. On the same day that Hartford filed its dismissal motion, Harper filed a motion to intervene in this action, which the district court immediately granted.

By its mid-March 2019 memorandum in opposition to Hartford's dismissal motion, Aarow contested the predicate for the motion — that Hartford's liability on the Payment Bond is derivative of Harper's liability on the Subcontract. Under Aarow's theory, the Miller Act requires Hartford to pay Aarow for uncompensated labor and materials provided to the Project, even if Harper's failure to pay for the labor and materials was not in breach of contract. Moreover, Hartford is liable for the additional costs incurred by Aarow as a result of disruptions to its work on the Project, whether or not Harper was responsible for the disruptions. According to Aarow, its interpretation of the Miller Act is supported by persuasive authority, including decisions from district courts within our Circuit and decisions of other courts of appeals.

7

During a late March 2019 hearing on Hartford's dismissal motion, the district court expressed skepticism as to the soundness of Aarow's theory that the Miller Act authorizes a recovery against Hartford on the Payment Bond absent Harper's liability on the Subcontract. Rather than ruling at the hearing, however, the court took the dismissal motion under advisement.

C.

1.

In April 2019, having not yet ruled on Hartford's motion to dismiss the Complaint, the district court granted Aarow leave to file a First Amended Complaint. *See Aarow/IET LLC v. Hartford Fire Ins. Co.*, No. 1:19-cv-00085 (E.D. Va. Apr. 9, 2019), ECF No. 29 (the "Amended Complaint"). The Amended Complaint asserts the two claims whose dismissal is contested in this appeal — the Miller Act claim against Hartford, plus the breach of contract claim against Harper.[2]

Significantly, the Amended Complaint includes allegations of Harper's wrongdoing not found in its predecessor. For example, the Amended Complaint alleges that "Harper did not cooperate with [Aarow] in the scheduling and sequencing of Aarow's work on the Project," as required under Article 5 of the Subcontract. *See* Amended Complaint ¶ 19. Additionally, the Amended Complaint blames Harper for the disruptions that caused Aarow to incur additional labor costs, alleging:

---

[2] The Amended Complaint had asserted a third claim — a claim against Harper for breach of the implied duty of good faith and fair dealing — that was also dismissed by the district court. On appeal, Aarow does not challenge the dismissal of that claim.

8

> Due to Harper's mismanagement of the Project, the Project suffered from numerous disruptions, all of which impacted Aarow's ability to prosecute its work on the Project in the timely, efficient, and sequential manner which it originally anticipated and planned when it compiled its price to perform its work on the Project. By way of example, Harper's mismanagement caused Aarow to experience labor inefficiencies and loss of productivity through comeback work, stacking of trades, out-of-sequence work, and idle labor crews due to areas not ready to receive Aarow's work.

*Id.* ¶ 20. The Amended Complaint seeks the same amount of damages as demanded in the Complaint and the REA — $2,900,619 — though it repeatedly attributes those damages to "Harper's mismanagement." *Id.* ¶¶ 20-23, 28-29, 31. Like the Complaint, the Amended Complaint explains that "Aarow submitted [the REA] to Harper" in April 2018 and that "Harper refused to compensate Aarow for the additional labor it rendered to the Project." *Id.* ¶¶ 30, 32.

Specific to the breach of contract claim against Harper, the Amended Complaint alleges that "Harper breached the Subcontract by failing to cooperate with Aarow and by failing to ensure that Aarow's work on the Project was properly sequenced." *See* Amended Complaint ¶ 49. The Amended Complaint further alleges that "[o]n numerous occasions throughout the course of working on the Project, Aarow notified Harper that it was encountering problems on the Project which were causing impacts to its ability to timely, properly, and efficiently perform its work on the Project." *Id.* ¶ 50. Lastly, the Amended Complaint alleges that "Aarow has satisfied all conditions precedent under the Subcontract to bringing its [breach of contract] claim against Harper." *Id.* ¶ 53. The Payment Bond, Subcontract, and REA are attached to the Amended Complaint as exhibits, just as they had been attached to its predecessor.

9

2.

Although Hartford had moved to dismiss the Complaint, it opted to file an Answer to the Amended Complaint rather than another dismissal motion aimed at the Miller Act claim. In May 2019, however, Harper filed a motion to dismiss the Amended Complaint, seeking a Rule 12(b)(6) dismissal of the breach of contract claim. Thereafter, Hartford joined Harper in contesting the plausibility of the breach of contract claim, still without requesting dismissal of the Miller Act claim.

The district court conducted a hearing on Harper's dismissal motion in June 2019. By that time, Harper (with support from Hartford) was offering four principal reasons why the breach of contract claim should be dismissed. First, Harper maintained that — notwithstanding the Amended Complaint's efforts to characterize the breach of contract claim as a "disruption" claim — the claim is actually a "delay" claim barred by the Subcontract's Article 8 no-damages-for-delay provision. In that regard, Harper contended that disruption claims are tantamount to delay claims as a matter of contract law.

Second, Harper argued that to the extent that the Amended Complaint may be interpreted to assert a viable disruption claim, the Amended Complaint conflicts with the attached REA and its clear declaration of a delay claim barred by Article 8 of the Subcontract. Therefore, under the exhibit-prevails rule, the REA negates the Amended Complaint. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (explaining "the exhibit-prevails rule, which provides that in the event of conflict between the bare allegations of the complaint and any exhibit attached, the exhibit prevails" (alteration and internal quotation marks omitted)).

10

Third, Harper contended that any disruption claim is nevertheless barred by Article 8 when read in conjunction with Article 7 of the Subcontract. More specifically, Harper suggested that because Article 7 refers to the Subcontractor being "obstructed or delayed," *see* J.A. 102, Article 8 is not just a no-damages-for-delay provision, but a "no-damages-for-delay-or-obstruction" provision.

And fourth, Harper argued that the breach of contract claim is proscribed under the Subcontract for violation of the Article 26 requirement for written notice of a claim within ninety days. On the premise that the Amended Complaint reflects that the REA was the sole written notice of Aarow's claim, Harper contended that Aarow contravened the ninety-day notice deadline by submitting the REA in April 2018, approximately nineteen months after Phases 5 and 6 of the Project were belatedly completed and five months after the missed completion date for Phase 7.

In response, Aarow insisted that the Amended Complaint asserts a disruption claim — not a delay claim — and that there are meaningful distinctions between disruption and delay claims that would become clearer with discovery. Contesting Harper's argument with respect to the exhibit-prevails rule, Aarow argued that the rule is inapplicable because the REA does not state a delay claim and thus does not conflict with the disruption allegations contained in the Amended Complaint. Notably, Aarow acknowledged that the REA "entitled this a delay claim." *See* J.A. 197. Aarow elaborated, however, that the REA actually asserts a disruption claim and simply utilizes delay days to estimate the additional costs caused by the disruptions. Furthermore, Aarow explained that it attached the REA

11

to the Amended Complaint merely to establish that it had demanded payment from Harper for disruption-related costs and had been rebuffed.

To counter Harper's contention that even a disruption claim is barred by Article 8 of the Subcontract, Aarow emphasized that Article 8 references only "delays" when, like Article 7, it could have referenced both "obstruct[ions]" and "delay[s]." *See* J.A. 102. As such, according to Aarow, Article 8 is a narrow no-damages-for-delay provision and not a no-damages-for-delay-or-obstruction provision.

Finally, Aarow disputed Harper's argument that the breach of contract claim is proscribed for violation of the Subcontract's Article 26 requirement for written notice of a claim within ninety days. That is, Aarow contested the premise that the Amended Complaint identifies the REA as Aarow's only written notice of its claim against Harper. Aarow pointed to the Amended Complaint's allegation that "[o]n numerous occasions throughout the course of working on the Project, Aarow notified Harper that it was encountering problems on the Project which were causing impacts to its ability to timely, properly, and efficiently perform its work on the Project." *See* Amended Complaint ¶ 50. Aarow also highlighted the Amended Complaint's separate allegation that "Aarow has satisfied all conditions precedent under the Subcontract to bringing its [breach of contract] claim against Harper." *See id.* ¶ 53. Expanding on those allegations, Aarow proffered that it had notified Harper more than ninety times, in writing on Harper's forms, of various disruptions throughout the course of the Project. In sum, Aarow contended that the Amended Complaint is sufficient and that discovery should proceed on its breach of contract claim.

12

3.

At the conclusion of the June 2019 hearing, following the parties' arguments, the district court announced its decision. Addressing Aarow's breach of contract claim against Harper, the court accepted that there may be meaningful distinctions between disruption claims and delay claims, and it declined to adopt Harper's theory that Article 8 of the Subcontract constitutes a no-damages-for-delay-or-obstruction provision. The court explained:

> As a matter of contract construction, the Court finds significant that while [Article 7] explicitly states that the [Sub]contractor shall be entitled to an extension in the event of delays or obstruction of work, [Article 8] prohibits any extras only for delays, and so it would appear that the [Sub]contract recognizes to some degree a distinction with respect to remedies for those pertaining to delays and those pertaining to disruptions.

*See* J.A. 214. Nevertheless, the court criticized the Amended Complaint for "mak[ing] little more than conclusory allegations that damages it seeks were attributable to what would be within the scope of obstruction as opposed to delays." *Id.* at 215. Moreover, the court observed that "to the extent [the Amended Complaint] has alleged any facts, those allegations appear to be inconsistent to a large degree by the substance of the [REA]." *Id.* As the court described it, the REA "makes clear . . . on its face that [Aarow's] claim is a delay claim and that the increased costs [Aarow] sought reimbursement for were due to that delay." *Id.* Accordingly, the court applied the exhibit-prevails rule and concluded that Aarow has asserted a delay claim barred by the Article 8 no-damages-for-delay provision.

Additionally, the district court determined that Aarow's breach of contract claim is proscribed under the Subcontract for violation of the Article 26 requirement for written

13

notice of a claim within ninety days. The court reasoned that the REA is "the only written notice that appears from the face of the [Amended Complaint]" and that neither the Amended Complaint nor the REA reflect that any of the claimed costs were incurred within ninety days of the submission date of the REA. *See* J.A. 216.

Having thus decided to dismiss the breach of contract claim against Harper, the district court proceeded to dismiss *sua sponte* the Miller Act claim against Hartford. In so doing, the court declared that the Miller Act "claim depends on Harper being liable as to the [breach of contract claim]." *See* J.A. 218. The court also explained that because the breach of contract claim was being dismissed, the Miller Act claim had to be dismissed "as well." *Id.*

By its Dismissal Order of that same day, the district court granted Harper's motion to dismiss and specified that it was dismissing the entire action. Aarow timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo the dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Attkisson v. Holder*, 925 F.3d 606, 619 (4th Cir. 2019). In our review, we accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Id.* We are also cognizant that, under Federal Rule of Civil Procedure 8(a)(2), a complaint needs "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is

14

and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).

III.

Limiting our review to the reasons given by the district court for its dismissal of Aarow's claims, we conclude that the court erred. We therefore vacate the judgment and remand for further proceedings on the breach of contract claim against Harper and the Miller Act claim against Hartford.

In dismissing the breach of contract claim, the district court determined that the REA clearly states a delay claim and thus conflicts with the Amended Complaint's allegations of a disruption claim. Applying the exhibit-prevails rule, the court then pronounced that Aarow's claim is a delay claim barred by the Subcontract's Article 8 no-damages-for-delay provision. Contrary to the court's ruling, the REA does not clearly state a delay claim. To be sure, the REA repeatedly uses the word "delay" and calculates "Delay Cost[s]" based on "Delay Days." *See* J.A. 111, 113. But the REA also refers to "disruptions," albeit ambiguously. *See id.* at 110 (stating that this "proposal does not include any cost amounts for . . . disruptions, . . . unless specifically noted otherwise"). Moreover, the Amended Complaint indicates that the REA followed "numerous" notices to Harper from Aarow about disruptions to its work on the Project — notices that may well shed light on the meaning of the REA. *See* Amended Complaint ¶ 50. In these circumstances, where the REA is ambiguous and potentially clarifying evidence awaits presentation, we cannot endorse the court's reliance on the REA and the exhibit-prevails

15

rule to dismiss Aarow's breach of contract claim. Simply put, this is not a situation in which it is readily apparent that "dismissal is appropriate [because] the document [attached to the complaint] negates the claim." *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal quotation marks omitted).[3]

The other reason given by the district court for its dismissal of the breach of contract claim is that Aarow violated the Subcontract's Article 26 requirement for written notice of its claim within ninety days. In so ruling, the court erroneously considered only the REA and disregarded the Amended Complaint's allegations that Aarow provided "numerous" notices to Harper about work disruptions and "satisfied all conditions precedent under the Subcontract to bringing its [breach of contract] claim." *See* Amended Complaint ¶¶ 50, 53. Those allegations are sufficient to demonstrate Aarow's compliance with Article 26. *See* Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.").

Finally, the district court's *sua sponte* dismissal of the Miller Act claim rested on two premises: (1) that Aarow failed to state a breach of contract claim against Harper; and (2) that Aarow therefore failed to state a Miller Act claim against Hartford, as Hartford's liability on the Payment Bond as surety is derivative of its principal Harper's liability on

---

[3] Insofar as the district court ruled that the Amended Complaint does not adequately plead a disruption claim, we disagree. The Amended Complaint provides all that is required — "a short and plain statement of the [disruption] claim showing that [Aarow] is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Whether a disruption claim is tantamount to a delay claim as a matter of contract law is a separate question that we do not reach and address today.

16

the Subcontract. As explained heretofore, the court erred in dismissing the breach of contract claim, meaning that the first of those premises was faulty. On that ground, we conclude that the court also erred in dismissing the Miller Act claim. Notably, we do not unnecessarily evaluate the merits of the court's second premise for the dismissal or the propriety of the court's decision to act *sua sponte*.


IV.

Pursuant to the foregoing, we vacate the judgment of the district court and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*